No. 2.   JOSEPH V. CONNERAT, plaintiff in error, *vs.* SAMUEL GOLDSMITH, defendant.

[1.] Cohabitation and joint use of goods purchased by the wife during coverture, is strong presumptive evidence of the assent of the husband, and of the agency of the wife in the purchase; which, however, may be repelled, by proof that the credit was in fact given to the wife.

[2.] A sells goods to the wife of B, and takes her note for the amount, she having a separate estate, and gives her a receipt for the bill. The husband and wife are living together, and the goods go into their joint use and occupation. *Held* that the credit was given to the wife, and that the husband is not liable, in a suit by the creditor, for the price of the goods.

[3.] In such a case, a parol promise by the husband to pay the debt, is void under the Statute of Frauds, because it is a promise to answer for the debt of another, and ought to be in writing.

Certiorari to Court of Common Pleas of Savannah. Decided by Judge FLEMING.

Mrs. Goldsmith, the wife of the defendant, had a considerable estate settled on her, to her sole and separate use. On the 14th of October, 1845, she purchased of the plaintiff in error sundry articles of household furniture, amounting to the sum of $200; for which amount she gave her individual note, at twelve months, and took the following receipt:

"Received, Savannah, Oct. 14th, 1845, from Mrs. E. Goldsmith, her note for two hundred dollars, at twelve months, being in full for one sofa, one centre-table, cloth, and astral lamp, six mahogany chairs, one mahogany rocking-chair, one mahogany dining-table, one set mantel-piece lamps and one carpet.

$200        (Signed,)        J. V. CONNERAT."

This suit was instituted by Connerat against Goldsmith, the husband, upon an open account for the same articles. The defendant pleaded the general issue, and that the articles were bought by and for his wife; were in no way necessary for the family; that the credit was given to the wife; and that her note had been given and received in full payment thereof. Upon the trial, in the Court of Common Pleas, evidence was given in of a promise, on the part of Goldsmith, to pay the note in a short time.

Other evidence was introduced to show that the goods went into the joint occupancy of the husband and wife, and also evidence on the part of the defendant, to show that they were not necessary.

Judgment was given, in the Court of Common Pleas, for the plaintiff, to which a writ of certiorari was prayed to the Superior Court; and, upon hearing the same, the judgment of the Common Pleas was reversed, and a new trial ordered.

To this decision of Judge Fleming, exceptions were filed, and error has been assigned thereon.

S. COHEN, for plaintiff in error.

To sustain the first ground, I shall rely upon the following authorities: *Prescott vs. Hubbell, McC.* 94. *Goodman vs. Parish,* 2 *McC.* 259. *Chastain vs. Johnson,* 2 *Bailey,* 574. *Tobey vs. Barber,* 5 *John.* 72, 73. *Costello vs. Cave & Bradley,* 2 *Hill, S. C.* 528, 531. *Fleming, Ross & Co. vs. Lawhorn,* 2 *Dudley, S. C.* 360–362. My idea is, that taking the wife's note is not, *under the circumstances,* a discharge of the husband. His use of the furniture, his implied assent from cohabitation, and *his subsequent promise,* all unite to fix his liability. *Petty vs. Anderson,* 3 *Bingham,* 170. *Hornbuckle vs. Hornberry,* 2 *Starkie,* 177. 2 *Starkie on Evidence,* Ed. 1830, 692. *Waithman vs. Wakefield,* 1 *Camp.* 120. *Railton vs. Hodgson,* 4 *Taunton,* 576 *n.note.* Merely contracting with a married woman is not, *per se,* evidence that the contract was made

in reference to her separate estate. *Jones vs. Harris,* 9 *Ves.* 485 —496. In most, if not all of the cases, where the wife is regarded as dealing in reference to her separate estate, it will be found that the husband and wife were living apart, or that the articles were extravagant luxuries beyond the means of the husband; and no case can be produced, where the principle is applied to the purchase of *necessary articles* of furniture, which the husband receives, uses, and promises to pay for. The case in 9 *Car. & Payne,* so much relied upon, has no bearing on this case. There, the purchase was of " singing birds," not necessaries, to an amount far beyond the husband's ability to pay, and no ratification of the act, *by a promise to pay.*

In addition, I shall refer to, and rely upon *Seaton vs. Benedict,* 2 *Smith's Leading Cases,* 279, *and the notes appended thereto.    Clifford vs. Laton,* 3 *Car. & Payne,* 15, *reported in* 14 *Eng. Com. Law Rep.* 188. *Rennick vs. Fickling,* 5 *B. Munroe,* 166.    *Graham on New Trials,* 362.    *Walter vs. Smith,* 4 *Dall.* 389.    *Lane vs. Ironmonger,* 13 *Meeson & Welsby,* 368. 2 *Smith's Leading Cases,* 365.

LLOYD & OWENS, for defendant.

1. Where any individual sells goods to a *feme covert,* and gives the credit to her, her husband will not be liable to pay for such goods, even though he see her in possession of them, and though it be not proved for defendant that such goods were not necessaries.    5 *Taunton,* 355.    3 *Camp.* 22.    1 *Carr. & P.* 16, *et nota.*    2 *Hill, S. C. R. p.* 335.    9 *Carr. & P.* 643.

2. The acts of the wife bind the husband alone upon the ground of agency.    Where the husband is bound by the acts of the wife, the law must infer an agency, before they can bind him.    *Fitz. N. B.* 277.    2 *Smith's &c.* 304, 11, 12.    34 *Eng. C. L. R. p.* 435, 508, 505.    28 *Eng. C. L. R.* 271.

3. Where a married woman, having separate property, gives her individual note, the law presumes an intention, on her part, to charge her separate estate, and the parties are presumed to have contracted with regard thereto. 2 *Vesey, Sr.* 193. 1 *Vesey, Jr.* 46.    1 *Brown,* 16.    17 *Vesey,* 365.    17 *John.* 548.    1 *Kelly,* 389. 2 *Story Eq. Jur.* §1401.

A promise to pay the debt of another, for which that other remains liable, must be in writing, to satisfy the Statute of Frauds. *Salkeld,* 27.

And further, the furniture purchased, was Mrs. Goldsmith's; she might have disposed of it as she pleased, and therefore, the promise of Goldsmith was *nudum pactum.* 1 *Vesey, Sr. p.* 49.

Where the wife acts as the agent of the husband, she acts as any other agent for a principal; and if the person with whom she deals, elects to give the credit to her, he cannot change his mind and charge the husband. 1 *C. & P.* 16, *et nota.*

If Goldsmith was the principal in the transaction, then the note of Mrs. Goldsmith, a third person, taken at the time, without Goldsmith's indorsement, and a receipt in full given, was payment.— 11 *John.* 409. 15 *John.* 241.

*By the Court*—NISBET, J. delivering the opinion.

A married woman has no authority, by virtue of the marriage, to bind her husband by her contracts. She may bind him for necessaries, and her power to do so, rests upon the idea, that her contracts for them are made with his assent, expressed or implied— so far as she can bind him, she is regarded as his agent. And when her contracts are for necessaries, suitable to her degree and condition, and she is living with her husband, she is his agent, possessed of a general and presumed authority, arising from his duty and liability to provide for her and his children. Such contracts are his, not her's. With respect to other contracts, she is not his agent, unless his authority be expressly proven. For these general principles, see *Emmet vs. Norton,* 8 *C. & P.* 506. *Manly vs. Scott,* 1 *Mod. R.* 125. *Montague vs. Benedict,* 3 *B. & C.* 631.— 5 *D. & R.* 532, *S. C. Ethering vs. Panott,* 2 *Ld. Raym.* 1006. *Chitty on Contracts,* 160, 161.

[1.] Cohabitation is strong presumptive evidence of the husband's assent to agreements made by her, for the supply of goods for herself and her husband's household, during their cohabitation. In this case, the husband and wife were living together—the furniture was put to their joint use—it was brought to the house by his assent, so far as is apparent, and certainly with his knowledge. Subsequently, he signified his assent to the bringing of the furniture to the house, and to the family use of it, by a verbal promise to pay for it. From these facts, it is assumed by the plaintiff in error, that he is liable to pay for the furniture. I apprehend the error into which counsel for the plaintiff has fallen, consists in the

assumption that cohabitation, knowledge of the purchase, and the joint use of the furniture, is *conclusive* of the husband's liability. From these facts, he insists that the husband's assent is necessarily presumed, and that the wife acting in the purchase as his agent, he is originally bound. Now, although the wife may bind her husband for necessaries; *yet, she does not bind him, when the credit is given to her.* And although cohabitation, joint use, &c. are strong presumptions, going to show his assent, yet they are only presumptions which may be rebutted by proof *that the credit was given to the wife, and not to the husband.* And just here, upon this question, whether the credit was given to the wife or not, this case turns. In the absence of all proof that the credit was given to the wife, I concede that where a husband is living in the same house with his wife, he is liable, without more, for the goods which he permits her to receive there and use. She is considered his agent, and the law implies a promise, on his part, to pay for them. If, however, it is clear that the credit was given to the wife, the presumption of assent, from these facts, goes for nothing; the husband is not liable, and the creditor must look to the wife as he may. In *Montague vs. Bennett, Bayley,* J. said—"Cohabitation is *presumptive* evidence of the assent of the husband, but it may be rebutted by contrary evidence; and when such assent is proved, the wife is the agent of the husband, duly authorized." 3 *Barn. & Cress.* 631.

"But even cohabitation, (says Mr. Chitty,) and a knowledge, on the part of the husband, that his wife has contracted for goods, are only presumptive, not conclusive of his assent, and consequent liability. The presumption may be repelled by circumstances, evincing that the tradesman gave credit *solely* to the wife; and if the Jury find that to be the fact, he is not liable." *Chitty on Contracts,* 163. In *Metcalf vs. Shaw,* the defendant and his wife were living together; there was no evidence that he had any knowledge of the dealings of his wife with the plaintiff; the goods in question, were ordered by the wife alone, *and she gave her own note* to the plaintiff, for the amount of the purchase. The action was brought by the creditor against the husband, for the price of the goods. *Ld. Ellenborough* held, that "the action, clearly, cannot be maintained on the note, as the wife had no authority, general or special, from her husband, as his agent, to make it; and I think he is not liable for any part of the goods, on this plain

ground, that they were not supplied on his credit, and the plaintiff looked to the wife, alone, for payment. The credit was given to the wife, and not to the husband." 3 *Camp.* 22. This case not only proves the general proposition I have stated, but also, that when a note is given by the wife, that fact is conclusive that the ·credit was given to the wife. In this particular, it is the case at this bar. In *Bently vs. Griffin,* the action was brought against the husband, for articles of dress bought by his wife, of plaintiff. They had debited the wife, in their books, for the amount. Husband and wife lived together. Plaintiff had been paid for part of their bill, by bills drawn on the husband, and accepted by his wife, she signing her initials. The husband had seen his wife wear a part of the articles bought. The bills which the wife had accepted, in part payment, were paid by her. *Heath, J.* said— " At the time of the trial, I told the Jury, that there was strong evidence to show that the plaintiff gave credit to the wife, and not to the husband, in the three bills being accepted and paid by the wife, and in the wife telling the servant to carry away the dresses, when brought home. I was much dissatisfied with the verdict." *Chambers, J.* said—" It is clear, that the verdict is grossly wrong," &c.

*Dallas, J.* said—" The question is, whether the general liability of the husband, is not repelled by the circumstances, which show that the credit was given to the wife. I think, most clearly, that the credit was given to the wife, and that the husband is liable for no part of these charges." 5 *Taunt.* 357, 358. Here, again, accepting a bill by the wife, is recognised as strong evidence, to show that the credit was given to the wife.

In *Holt vs. Brien,* Holroyd, *J.* said—" If a husband supplies his wife with money, sufficient for the purchase of necessaries, he is not liable for any debt contracted by her, for necessaries, to a party who has notice of the allowance. Here, the plaintiff had express notice of that fact, and trusted the wife, on her own promise to pay, out of her quarterly allowance; and although that was not binding, in point of law, on her, still, it shows that the credit was given expressly to the wife ; in which case, the husband is not liable," &c. 4 *Barn. & Ald.* 253. See, also, *Taylor vs. Brittain,* 1 *C. & P.* 16, *note. Legitt vs. Reed, idem,* and *Atkins vs. Carwood,* 7 *C. & P.* 760.

The case of *Moses vs. Fogartie,* is, in its facts, like this—a note

being given by the wife, for the debt, husband and wife living together. *Harper, J.* said—"I think it evident, from the circumstances of plaintiff taking Mrs. Fogartie's note, that he furnished the goods on her credit, and not on her husband's. In *Bently vs. Griffin*, 5 *Taunt*. 356, the plaintiff furnished articles of dress, to the wife, and charged them to her, on his books. He drew some bills of exchange on her husband, which were accepted, and partly paid by the wife. The Jury, having found for the plaintiff, a new trial was granted, on the ground, that the articles were not furnished on the credit of the husband. The case of *Metcalf vs. Shaw*, is almost exactly in point to the present. From the circumstance of plaintiff's having taken the wife's note, *Lord Ellenborough* held it conclusive, that the goods were not furnished on the husband's credit, but that the plaintiff looked to the wife alone." 2 *Hill's S. C. R.* 335, 336.

[2.] In the case before us, the plaintiff gave to the wife a *receipt for the bill of furniture, and took her note for it; and farther, she had a very considerable separate estate.* From the authorities referred to, we think it clear, that the credit was given to the wife, and that the husband is not originally liable.

The idea of agency is precluded in this case, on another ground. The wife had a separate estate, and the contract was made with her. It was competent for her to contract, so as to bind her separate estate. She did so contract. We have a right to infer, that the plaintiff contracted with her, as a *feme covert*, having a separate estate, and as to that estate, a *feme sole*. She was, therefore, the principal in the contract, and *ex vi termini*, nobody's agent. The doctrine, therefore, of ratification, has no application to this case.

[3.] If the husband made a promise to pay this debt, it being a promise to answer for the debt of another, and not being in writing, it is void, under the 4th section of the Statute of Frauds. The plaintiff is not remediless—by taking the proper steps, he may recover the note out of the separate estate of the wife.

Let the judgment be affirmed.