MORRIS *et al. v.* MURPHEY & COMPANY.

1. In the absence of fraud or collusion between an administrator and a creditor of an estate, a judgment regularly rendered in a court of competent jurisdiction in favor of such creditor against such administrator is conclusive, as to all matters adjudicated thereby, upon legatees and all other creditors of the estate.

2. Where an issue was formed in a justice's court upon an affidavit of illegality, and the affiant failed to appear to prosecute the same, the proper practice was for the court to dismiss the affidavit of illegality, and not to render judgment against the affiant upon the merits of the issue. Where, however, in such a case the latter judgment was rendered, though erroneous, it was not void, and, if acquiesced in by the affiant, became conclusive upon him and his privies.

January 14, 1895.

Petition for injunction. Before Judge HUNT. Upson county. October 20, 1894.

SIMMONS & CORRIGAN, for plaintiffs in error.

M. H. SANDWICH and HALL & HAMMOND, *contra.*

ATKINSON, Justice.

1. In 1878 a judgment was obtained, and in 1879 an execution issued thereon. In 1882 another judgment by

a different plaintiff was recovered against the same defendant. In 1893 the execution issued on the older judgment was levied on certain land as the property of the defendant in execution, and he, between the date of the rendition of the judgment and the date of the levy, having died, the administrator upon his estate filed an affidavit of illegality to the execution, on the ground that the judgment which was the basis of plaintiff's execution was dormant and that the same had not been revived within the time allowed by law. Two other executions, in all respects similar to the one then proceeding, were issued in favor of the same plaintiff; but we do not deem it necessary to set out in detail all the entries thereon nor proceedings thereunder, as the same questions are involved with reference to each, and may be fairly stated in our discussion of the questions arising upon a consideration of one of them. The illegality thus filed came on to be heard, and, the administrator neither appearing in person nor by counsel, the court, upon tender of issue by the plaintiff in execution, after hearing evidence, rendered a judgment overruling the affidavit of illegality, the effect of which was an adjudication in favor of the validity of the judgment upon which said execution was issued. Afterwards, the plaintiff seeking to enforce this judgment, the plaintiff in the junior execution above referred to, but whose judgment had in the meantime become dormant, though the time allowed by law in which it might be revived had not then elapsed, instituted equitable proceedings and sought thereunder to enjoin the enforcement of the judgment and execution then proceeding against said estate, upon the same grounds that were made and set up in the affidavit of illegality as filed by the administrator. Upon the hearing of the application, the court granted an injunction. There were certain affidavits introduced upon the hearing, and as well certain documentary evidence; but as the questions

which control this case arise under the facts hereinbefore stated, the consideration of this additional evidence is not necessary to a correct determination of this case.

1. The grant of this injunction and the exception to its allowance present for the adjudication of this court the question as to whether all creditors of an estate, either by judgment or otherwise, are so far in privity with an administrator thereof as that a judgment in favor of one of such creditors against the administrator is conclusive upon all questions adjudicated thereby as between himself and other creditors. It is a well recognized and universal rule of law, that judgments unexcepted to and unreversed are, upon all matters which were or ought to have been adjudicated thereby, conclusive as between the parties thereto and their privies in estate. "Privity is defined to be," says Black on Judgments, vol. 2, section 549, "a mutual or successive relationship to the same rights of property, and the common law writers classify privies as privies in law, in blood or in estate, sometimes adding as a fourth class privies in representation. But for the purposes of a discussion of the doctrine of *res judicata*, this classification is of no practical importance. And if a person is bound by a judgment as a privy to one of the parties, it is because he has succeeded to some right, title or interest of that party in the subject-matter of the litigation, and not because there is privity of blood, law or representation between them, although privity of the latter sort may also exist. . . The person who is to be thus connected with the judgment must be one who claims an interest in the subject affected, through or under one of the parties. Every person is a privy to a judgment whose succession to the rights of property thereby affected, coming through one or other of the parties, occurred subsequent to the commencement of the suit." "All privies are in effect (with reference to the operation of judgments), if not in

name, privies in estate. They are bound because they
have succeeded to some estate or interest which was
bound in the hands of its former owner, and the extent
of the estoppel so far as the privy is concerned, is lim-
ited to controversies affecting this estate or interest.
The manner in which the estate was lawfully acquired
neither limits nor extends the operation of the estoppel
by a former adjudication, and is therefore immaterial.
It is well understood, though not usually stated in ex-
press terms in works upon the subject, that no one is
privy to a judgment whose succession to the rights of
property thereby affected occurred previously to the in-
stitution of the suit." Freeman on Judgments, vol. 1,
4th ed., sec. 162. The administrator is in law the per-
sonal representative of the deceased. He is, for all
practical purposes involving the administration of his
affairs, a legal substitute for the deceased. Clothed as
a trustee with the duty of administering all the assets
which may come into his hands, and applying the same
under the statute of distributions, it is his duty to repre-
sent the estate in any litigation in which it may become
involved, to prosecute suits in favor of and defend suits
against the estate he represents. He is the party chosen
of the law to whom these interests are committed. No
person other than he, for and on behalf of the estate,
can in his own name as matter of right prosecute or de-
fend a suit in which his estate is interested as plaintiff
on the one hand or defendant on the other. The ad-
ministrator with respect to such matters stands upon
the same footing as the deceased. It will not be seri-
ously insisted that a judgment rendered against a person
in his lifetime, with due notice of the pendency of the
action, fairly rendered, and to which no exception was
by him taken, could thereafter be called in question by
a creditor of such a person. No more can it justly be
said that his estate would not be equally bound where

a judgment, under similar circumstances, has been rendered against his administrator. In contests which arise between the administrator and third persons who are indebted to the estate, the administrator represents all persons who may be interested therein, either as heirs or creditors. As against person's preferring claims aginst the estate, the administrator likewise stands as the representative of the estate and its interests, for and on account of heirs at law and all other creditors. Through him alone can they reduce to present possession any of the credits or assets of the deceased, or make the same available for the purpose of distribution. If this were not true, and on the contrary each individual creditor and heir at law were authorized in his own name to bring suits and collect assets, no man could afford to submit to a judgment rendered against him at the suit of an administrator; because the acquiescence therein might subject him to further suit at the instance of any other person who might conceive that he had a claim against the estate. So persons indebted to the estate could never pay the administrator, for fear some outside creditor, upon his own account, might bring a suit against them. To hold that each individual creditor might upon his own behalf proceed with the collection of his debt from the debtors of the estate without the intervention of the administrator, would involve the whole affair in the most inextricable confusion; for if one creditor could so assert his right outside of the administrator, another could do so, and a man who was so unfortunate as to find himself the debtor of an estate, would in every individual instance be compelled to file a bill of interpleader to determine whether he should pay the money and who was entitled to receive it. The law avoids all this confusion by nominating the administrator in advance as the stakeholder, and compels creditors through him, as against the estate and its debtors,

to enforce their demands. It is only through the administrator that a creditor can compel the payment of debts due the estate, for the reason that there is no direct privity between individual creditors and debtors of an estate. The only privity existing between the administrator and a debtor of the estate is such as results from the pre-existing relation between the intestate and the debtor, and privity of some sort is essential to the maintenance of an action. Inasmuch as it is the duty of the administrator to collect the assets of the intestate, and inasmuch as outside creditors are not authorized to interfere with the collection of such assets, it is the corresponding duty of the administrator to defend all suits that may be brought against the estate. It thus being his duty for and on account of the estate to prosecute and defend such suits as its interest might seem to require, and he being not only a proper but an indispensable party thereto, it were ill to say that the judgment would have no binding force as against the estate. If it be binding upon the estate, it must of necessity be binding upon creditors who could have no interest except such as was derived from their privity with the administrator. An outside creditor, if he can do so at all, can only interfere as a party in such litigation when he shows that, because of some wrongful act of the administrator, his debt is likely to be imperiled. So that in this case it was the duty of this administrator, when a creditor of the estate sought to subject this land under a pre-existing judgment to the payment of his debt, and when he conceived that he had good cause for so doing, to have filed this affidavit of illegality. It was his duty to have prosecuted it to a successful termination, if that could have been accomplished. Failing in that, the judgment overruling the affidavit of illegality must be taken as binding upon the administrator upon the point made in that affidavit; and inasmuch as no

person other than the administrator has any right to in-
terfere, then this complainant cannot be heard to impeach
the judgment with which the administrator was himself
satisfied. Of course this whole argument proceeds upon
the idea that this judgment was fairly rendered. If the
administrator and one creditor permit a collusive judg-
ment to be taken which may operate as a fraud upon
other creditors, they may for that reason impeach and
set it aside. Such creditors may also have their election
to proceed against the administrator and his bondsmen.
But in this case there is no intimation that this judg-
ment is void for any such reason. If, without collusion
with the plaintiff in execution who is a creditor, the
administrator negligently permit a judgment to be ren-
dered against him to the prejudice of other creditors,
then the administrator and his bondsmen might be an-
swerable to such creditors. So far, however, as this
record discloses, the administrator filed this affidavit of
illegality in good faith, intending to insist upon it, but
simply, for some reason not disclosed by the record,
failed to be present when it was tried and did not ex-
cept to the rendition of the judgment thereon. He is
simply in the situation of a defendant in execution who
has permitted a judgment to be rendered against him
by default. For this reason alone a judgment cannot be
impeached or set aside. If void for any other reason,
that reason must be alleged and proved. The effect of
this disposition of the affidavit of illegality is to adjudi-
cate that the judgment which was enjoined was, as against
the attack made by the equitable petition, a valid sub-
sisting judgment and entitled according to its priority
to participate in the distribution of this estate. Upon
this question the administrator, in behalf of all con-
cerned, had been fully heard, and we hold that both heirs
and creditors are concluded.

2. Where an affidavit of illegality is filed to an exe-

cution, and when the case comes on to be heard the affiant in the affidavit of illegality does not appear, the proper practice is for the court to dismiss the affidavit of illegality, and not adjudicate upon its merits. If the court, however, proceed to final judgment upon the merits, such a judgment is not void; it is at most only irregular, and, if not excepted to, becomes binding as though in all respects regular. The practical effect, however, of the dismissal and an adjudication upon the merits of an affidavit of illegality is* the same, for no second affidavit of illegality to the same execution for the same reason assigned in the first can ever be received. Therefore, as to questions made in the affidavit of illegality where the same go to the validity of the judgment, it would make little practical difference whether the affidavit be dismissed or be adjudged upon its merits adversely to the party filing the same.

*Judgment reversed.*