## 5506. ADLER *v.* MORRISON.

WADE, J. 1. The consent of a husband to the wife's agency for him in purchases of necessaries for herself and her minor children, suitable to the condition and station of the family, is to be presumed (Civil Code. § 2996); and this presumption can only be rebutted by positive and unequivocal evidence that the articles furnished were not necessaries, or that the seller had either actual or constructive notice of an allowance

to the wife by the husband, either permanent or temporary, sufficient to enable her to procure necessaries without obtaining them upon her husband's credit.

2. In the present case there was positive evidence that the articles purchased upon the husband's credit were necessaries, and the only testimony in contradiction thereof amounted merely to equivocal expressions of opinion as to the non-necessity of the articles purchased, no facts being offered to the jury upon which they could form an opinion. The seller was not bound by the fact that the husband had furnished the wife with money at the time of her purchases, since there is no evidence, either direct or circumstantial, to charge the seller with notice of that fact.

3. The verdict, not being supported by any evidence, was contrary to law, and the trial judge therefore erred in overruling the motion for a new trial.          *Judgment reversed.   Roan, J., absent.*

DECIDED SEPTEMBER 11, 1914.

Appeal; from Wheeler superior court—Judge Graham.   October 28, 1913.

Leopold Adler sued Dr. M. Morrison in a justice's court, on an open account for articles of dress furnished on November 21, 1907, to the defendant's wife, amounting to $81.42.   The defendant filed a plea denying indebtedness, and denying that he had authorized the purchase of the goods.   The trial of the case, on appeal, in the superior court resulted in a verdict for the defendant.   The plaintiff moved for a new trial, alleging that the verdict was contrary to law and to the evidence; and the case came to this court on exceptions to the refusal of the motion.

From the evidence it appeared that the defendant and his wife resided together in Mount Vernon.   She testified: "I bought the articles mentioned in the bill of particulars in Savannah, at the instance of Dr. Morrison, my husband, and he stated to me that he would pay for them, but delayed payment, as he stated to me, for the purpose of disgracing my credit in Savannah and to prevent me from buying more on his account.   This credit was extended to him by the plaintiff.   The articles were bought for myself and minor children, and were necessary, and such articles of clothing as we had been accustomed to.   It is not true that I abandoned my husband on the date of this purchase, but, on the contrary, I only remained in Savannah about three days on the occasion of buying the merchandise herein set out, and afterwards returned to Mount Vernon, where I resided, and put my children in school.   It is not true that the defendant furnished me all the necessaries of life for

myself and children while I lived with him. The articles bought of the plaintiff and set out in the bill of particulars were actual necessaries for myself and children, which he refused to buy for us, but told me to go to Savannah and get them. Defendant did not provide my children with the necessaries, and did not try to keep me at home, nor keep the children in school. I did not hear from the defendant while in Savannah this time; I was there only three days. I did not ask defendant to furnish me with anything while I was in Savannah this trip. Each package I bought contained a slip showing the articles I bought, the price paid, and that the credit was extended to Dr. Morrison. The plaintiff asked me who to charge the articles to, and I told him to Dr. Morrison, the defendant, and had them call Col. Meldrim and others, whom I do not now recall, and asked them to recommend him, which they did. I told them to charge the goods to Dr. Morrison. My husband was not accustomed to buy for me skirts costing $16.50, gloves costing $3.50, jewel box $1.50, hat-pin $1.50, belt $1.50" (referring to items of the account).

The defendant testified, that he had not bought goods from the plaintiff and had not told the plaintiff to sell goods to his wife; that he always bought what she needed for herself and the children; that he "bought her a whole lot of stuff in Glenwood just before she claims to have bought the goods sued for, and she said she wouldn't have them, and threw them in an old house in the back yard; she said she wouldn't have them because they were bought at Glenwood;" that he gave her $75 and told her to buy what she and the children needed, and she took the money and went off to Savannah with it, a day or two before the date of this bill; that he never consented for her to buy any goods of the plaintiff on his credit; that it was not necessary for her to do so, because he had furnished her with ample funds to buy what she needed; that he did not tell the plaintiff that he had given her any money; that he was a practising physician and was "doctor for the Seaboard Air-Line Railway at Mount Vernon" at that time; he did not know what he was worth; he was a "sort of a specialist on typhoid fever," and he owned "a good deal of land" in the county; "if there was any good society" in Mount Vernon his family went in it; he had three minor children at that time,—a boy and two girls, one girl about half grown; he tried to send them to school, but their mother would not

let them go; he bought his wife whatever she told him to get; she said she wanted to buy something for herself and children with the money, at the time he gave her the $75, just before she went to Savannah and bought the goods sued for. Charlie Morrison testified that he remembered the giving of the $75 by the defendant to the defendant's wife, his mother, and that she took the money and went to Savannah.

*Herschel P. Cobb, Saffold & Stallings,* for plaintiff, cited: Civil Code of 1910, § 2996; *Connerat* v. *Goldsmith,* 6 *Ga.* 14; *Rushing* v. *Clancy,* 92 *Ga.* 769; *Tompkins* v. *Corry,* 14 *Ga.* 118; *Cowart* v. *Epstein,* 101 *Ga.* 1.

*J. B. Geiger,* for defendant, cited: Civil Code, § 2996; *Connerat* v. *Goldsmith,* supra; *Sulter* v. *Mustin,* 50 *Ga.* 242.