26645. HICKS *et al.,* executors, *v.* WADSWORTH.

DECIDED MARCH 17, 1938.

A. J. *Camp,* C. B. *McGarity,* for plaintiffs in error.
*William* G. *McRae,* contra.

BROYLES, C. J. Henry Grady Wadsworth sued W. A. Hicks and John N. Hicks, as executors of the will of W. M. Hicks, for $1352.72, alleged to be due plaintiff under a provision of the will of his mother, Mrs. M. T. Hicks, whereby she bequeathed to her husband, W. M. Hicks "all of her personal property of every character" during his natural life, and directed that at his death "all of the said property which had not been destroyed by the use thereof should vest in and become the property of petitioner for and during his life." The petition further alleged that Mrs. M. T. Hicks "left as a part of her personal estate money in the amount of $1352.72;" that W. M. Hicks and A. J. Camp Sr. qualified as executors of the will of Mrs. M. T. Hicks, and W. M. Hicks as such executor "came into possession of said $1352.72," and as legatee under said will "assumed control over . . said sum;" that it was the duty of W. M. Hicks, both as executor of the will of petitioner's mother and as owner of a life estate in said sum, "to preserve and protect the said money and cause the same to be paid over to petitioner at the time of . . W. M. Hicks's death;" and that "said sum of $1352.72 is due and owing to petitioner from the estate of . . W. M. Hicks," and payment of the same was refused, though plaintiff made demand therefor on the defendants as executors of the will of W. M. Hicks. The defendants pleaded in substance that they were informed and believed that Mrs. M. T. Hicks died leaving about $1300 on deposit in the Merchants National Bank of Rockmart; that said bank failed and was liquidated; that prior to such failure W. M. Hicks did not check out any of said money, but that defendants understand that he did receive from the liquidating agent of the bank dividends on Mrs. M. T. Hicks's account amounting to about $750;

that "other dividends were paid out, but . . petitioner received same;" that under the will of Mrs. M. T. Hicks, W. M. Hicks "had the right to use the property and moneys" belonging to her estate "for his own use, and was not accountable for any part of same that was not destroyed by its use;" that W. M. Hicks expended in paying "the debts and obligations of Mrs. M. T. Hicks" designated sums, including $400 "to Mrs. Effie Ratteree under judgment," and $50 "to E. S. Ault for counsel fees in Ratteree suit;" that defendants "have no property in their possession belonging to the estate of Mrs. M. T. Hicks or to petitioner . ., and that, so far as they know, W. M. Hicks, at his death, had" no such property, "except that [which] has already been delivered . . to petitioner;" that plaintiff "filed with defendants certain demands for the delivery or payment of certain property belonging to the estate of Mrs. M. T. Hicks, and all of same was delivered to him as . . directed in the will of Mrs. M. T. Hicks;" that though plaintiff had notice of the death of W. M. Hicks, the probation of his will, and the appointment of defendants as his executors, he never "demanded the payment . . by defendants of the money herein sued for" or "filed any claim with defendants . . showing that the estate of W. M. Hicks was indebted to him in any sum whatsoever;" that neither at the time of filing this suit, nor since, have "the defendants had in their hands or possession any property or moneys belonging to the estate of W. M. Hicks;" that W. M. Hicks died on October 29, 1934, and defendants qualified as his executors on December 3, 1934; that on December 18, 1935, "defendants paid off and settled with the heirs of W. M. Hicks's estate;" and "that before the filing of this suit defendants had fully administered the estate of W. M. Hicks, to wit, on December 18, 1935."

At the conclusion of the evidence the court directed a verdict against the defendants, as executors of the will of W. M. Hicks, for $597.53 and costs, and a judgment was entered accordingly. The defendants' exception is to the judgment overruling their motion for new trial containing the general and four special grounds. In the amendment to the motion for new trial error is assigned (1) on the refusal of the court to admit in evidence the petition, verdict, and judgment in an action brought by Mrs. Effie Ratteree against W. M. Hicks and A. J. Camp, as executors of

the will of Mrs. M. T. Hicks; (2) on the refusal of the court to admit in evidence a receipt for $50 paid by W. M. Hicks to Mr. E. S. Ault for legal services rendered in the Ratteree case; (3) on the direction of the verdict against the defendants; and (4) on the failure of the court to deduct from the directed verdict $400 paid by W. M. Hicks in settlement of the judgment in the Ratteree case, together with the $50 paid Mr. Ault for legal services in that case. Since the questions presented by the several assignments of error may be better understood by a consideration of the facts in the case, we shall give a resume of those facts as they appear from the agreed statement of facts and the brief of evidence. The substance of the agreed statement of facts is as follows: Mrs. M. T. Hicks died on June 27, 1927. In item 3 of her will she "bequeathed to her husband, W. M. Hicks, for and during his life . . all of her personal property of every character whatsoever, and provided that" at his death "all of said property which had not been destroyed by its use should vest in and become the property of the plaintiff, Henry Wadsworth, in fee simple for and during his life, and at his death said property to become the property of plaintiff's bodily heirs, and subject to division when the youngest child of plaintiff shall become 21 years old." W. M. Hicks and A. J. Camp qualified as executors of the will of Mrs. M. T. Hicks, and "W. M. Hicks had the right to the use and the benefit of all of said property under his life-estate therein until his death, which occurred on the 26th day of October, 1934, in Polk County, Georgia." At the time of her death Mrs. M. T. Hicks had on deposit in the Farmers & Merchants National Bank, at Rockmart, Georgia, $1147 in a savings account, and $32 in a checking account; and all of said money remained on deposit in said bank in Mrs. M. T. Hicks's name from the time of her death until the bank failed and was taken over for liquidation by the Comptroller of the Currency of the United States in the latter part of 1931. On dates ranging from August 7, 1931, to December 26, 1933, inclusive, the Comptroller of the Currency "issued checks as dividends on said account payable to W. M. Hicks and A. J. Camp, as executors of M. T. Hicks's estate," said checks aggregating $803.17. These checks were cashed by said executors. "And . . the Comptroller of Currency . . issued checks, as dividends on the said account, payable to plaintiff,

Henry Grady Wadsworth, heir as aforesaid of the estate of Mrs. M. T. Hicks, deceased, which were cashed by plaintiff." Said checks were two in number, each dated April 1, 1935, and aggregating $213.95. When said bank closed for liquidation the said savings account in the name of Mrs. M. T. Hicks amounted to $1352.78, and the checking account of $32 remained the same. "The difference in the amount of the savings account, at the death of Mrs. M. T. Hicks and at the time said bank closed for liquidation, was the accrued interest, paid by said bank, on savings account."

The plaintiff testified in substance that Mrs. M. T. Hicks was his mother, that W. M. Hicks was his stepfather, and that the defendants were sons of W. M. Hicks; that on the day the will of W. M. Hicks was probated in Cedartown, he demanded "the money in Farmers & Merchants Bank" from John N. Hicks and he refused to pay it to him; that witness knew that the money was in the bank when he made this demand; that none of the property due him under his mother's will was delivered to him except certain deeds; and that he was not present when W. M. Hicks's will was probated and did not know that the defendants had been appointed executors. John N. Hicks testified in part: "I knew nothing about the bank account in the Farmers & Merchants Bank during my father's life. When W. M. Hicks and A. J. Camp Sr., who were executors of Mrs. Hicks's will, received the dividend checks from the Comptroller-General of the Currency, they endorsed those checks over to me, and I cashed them. I knew that $803.17 came out of the account Mrs. Hicks had in the Farmers & Merchants Bank at Rockmart. I also knew of the provision in the will of Mrs. M. T. Hicks that provided that my father have the use of the property during his life and at his death to go to the plaintiff in this case. I sent Mr. Wadsworth the deed after my father's death. . . I understood that the money was father's, and not just the income from same. But that is not the reason that we did not pay the money to plaintiff. There has never been any demand made on us for it. . . I sent him the deeds because he wrote me for them, but did not demand or mention any other property except a ring and pistol, and I knew nothing about them. As to how he got the two payments on the bank at Rockmart, I understood that he had a right to it

after my father's death. . . I have settled with the heirs of W. M. Hicks. . . It was more than a year after we had been appointed. At that settlement we paid the heirs all the money belonging to the estate of W. M. Hicks. At the time of the suit by Wadsworth against us, I had no money, property, or other thing of value, in my hands, belonging to the estate of W. M. Hicks, and have had nothing since the filing of the suit. . . I am still executor under the will of W. M. Hicks. The heirs under the will of W. M. Hicks were myself, J. R. Hicks, [and five others]. It was divided according to the will. . . The money that my father received on the checks from the bank at Rockmart was with the rest of the money and distributed to the heirs. I do not recall the amount, but think that W. A. Hicks was about right, three hundred and seventy odd [dollars] each." W. A. Hicks testified in part: "The receipts in settlement with the heirs were signed on December 18, 1935. . . I did not do any of the paying out; John Hicks actually got the money. I did not sign the checks sent to him. . . I got my share of the estate. As well as I remember, it was $373 and something." In reference to the suit brought by Mrs. Effie Ratteree against W. M. Hicks and A. J. Camp as executors of the will of Mrs. M. T. Hicks, there was testimony to the effect that Mrs. Hicks employed Mrs. Ratteree to do general housework for her and promised to pay for the services rendered; that the services were rendered; that W. M. Hicks settled the judgment rendered against Hicks and Camp, as such executors, for $400, which he paid himself; and that W. M. Hicks also paid Mr. Ault a fee of $50 for services rendered in the Ratteree case.

The assignment of error in the first special ground is that the court erred in refusing to admit in evidence "a suit . . filed by Mrs. Effie Ratteree in Paulding superior court, the verdict of the jury and judgment of the court, said suit being against William M. Hicks and A. J. Camp executors of the estate of M. T. Hicks." It appears from a copy of the petition incorporated in the ground that the suit was brought to recover $1102.50, alleged to be due the plaintiff for services rendered by Mrs. Ratteree in "nursing, waiting on, cooking for, and doing general housework for . . Mrs. M. T. Hicks" from March 25, 1921, to June 28, 1927, under an agreement between Mrs. Ratteree and Mrs. Hicks.

that the latter would pay for those services. On August 6, 1929, a jury rendered a verdict for the plaintiff for $625 principal and $92.35 interest, and on the following day a judgment was entered on that verdict. It is averred in the ground that "A. J. Camp testified that said judgment . . against the estate of Mrs. M. T. Hicks was settled for $400 by William M. Hicks, and that same was paid by William M. Hicks from his own personal funds and not with any funds belonging to the estate of Mrs. M. T. Hicks," and that "said $400 . . should have been deducted from the amount . . so recovered, or shown to have been due him [plaintiff] under the will of Mrs. M. T. Hicks." Of course any estate that can be created in realty may be created in personalty (Code, § 85-104) ; and this includes money. *Barmore* v. *Gilbert,* 151 *Ga.* 260, 262 (106 S. E. 269, 14 A. L. R. 1060), and cit. It was the right of W. M. Hicks to use the money so long as he lived, but it was his duty to exercise "the ordinary care of a prudent man for its preservation and protection," to the end that Henry Grady Wadsworth might get his remainder interest unimpaired. Code, § 85-604; *Barmore* v. *Gilbert,* supra. We hold, under the evidence in this case and the law pertaining thereto, that W. M. Hicks was entitled to use *only the interest* on the money in which he had a life estate. Counsel for the defendant in error contends that, "as a matter of law, the services of Effie Ratteree were not properly chargeable against the estate of Mrs. M. T. Hicks." It is quite true that the Code, § 53-510, provides that, "The husband shall be bound to support and maintain his wife, and his consent shall be presumed to her agency in all purchases of necessaries suitable to her condition and habits of life, made for the use of herself and the family . . ;" but it is also true that the wife may bind herself by a special contract to pay for such necessaries. *Connerat* v. *Goldsmith,* 6 *Ga.* 14; *Morris* v. *Root,* 65 *Ga.* 686 (4) ; *Rushing* v. *Clancy,* 92 *Ga.* 769 (19 S. E. 711) ; *Shaw* v. *Allen,* 34 *Ga. App.* 111 (128 S. E. 699) ; *Butler* v. *Godley,* 51 *Ga. App.* 784 (181 S. E. 494). Furthermore, "A judgment of a court of competent jurisdiction shall be conclusive between the same parties and their privies as to all matters put in issue, or which under the rules of law might have been put in issue in the cause wherein the judgment was rendered, until such judgment shall be reversed or set aside." Code, § 110-501. See also *Watkins* v. *Lawton,* 69 *Ga.* 671;

*Morris* v. *Murphey,* 95 *Ga.* 307 (22 S. E. 635, 51 Am. St. R. 81); *Clark* v. *Tennessee Chemical Co.,* 167 *Ga.* 248 (5) (145 S. E. 73). There is no contention that the Ratteree judgment was procured by fraud or collusion, and it was valid and binding against the estate of Mrs. M. T. Hicks. Although it appears somewhat irregular for W. M. Hicks to settle the judgment against the estate of Mrs. M. T. Hicks out of his personal funds instead of out of the money in the bank, and leave the money in the bank just as Mrs. M. T. Hicks had left it there when she died, it might have been done in order that the money in the savings account continue to draw interest, to which W. M. Hicks was entitled. But, whatever the reason, it does not appear that he had any cause to believe that the bank was unsafe until it broke. Neither is there any reason to conclude that W. M. Hicks intended to give the $400, paid out of his personal funds in settlement of the Ratteree judgment, to the estate of Mrs. M. T. Hicks. This would have been very much like giving the money to his stepson, Wadsworth, who was entitled to the remainder interest in the money left by his mother, Mrs. M. T. Hicks. Our view is that the evidence in question was admissible, and we hold that the court erred in overruling the first ground of the amendment to the motion for new trial. We also hold that the court erred in refusing to admit in evidence the receipt for $50 paid by W. M. Hicks to Mr. E. S. Ault for legal services rendered in the Ratteree case; and that the direction of the verdict was erroneous. The fourth and last ground of the amendment to the motion for new trial is controlled by our rulings upon the first two grounds of the amendment.

*Judgment reversed. MacIntyre and Guerry, JJ., concur.*