## HARPER *v.* JEFFERS.

1. Where in a trover case the plaintiff sued out bail process and the defendant was imprisoned thereunder, on the hearing of an application for discharge, under the Civil Code, § 5154, the applicant could set up, as a reason for granting the discharge, that there was no sufficient description of the property in the affidavit to obtain bail.

2. In a trover suit to recover money, a description thereof contained in an affidavit to require bail as being "seven hundred dollars and seventy cents, the same seven hundred dollars being in the denomination of twenty and ten dollars gold certificates, and the seventy cents being in silver, the same being the property of the petitioner, Georgia Jeffers, and of the value of $700.70," was insufficient.

3. Under the evidence it was error to refuse to discharge the defendant from imprisonment.

APRIL 13, 1913.

Application for discharge in trover. Before Judge J. B. Park. Baldwin superior court. December 2, 1912.

Georgia Jeffers instituted an action of trover against Rebecca Harper, seeking to recover certain money. The plaintiff also filed an affidavit for the purpose of requiring bail. In the affidavit the money was described as follows: "seven hundred dollars and seventy cents, the same seven hundred dollars being in the denomination of twenty and ten dollars gold certificates, and the seventy cents being in silver, the same being the property of the petitioner, Georgia Jeffers, and of the value of $700.70." The defendant was arrested and imprisoned. In accordance with the statute she filed a petition, addressed to the judge of the superior court where the action was pending, alleging that she was able neither to give bond and security nor to produce the property; and that she had never been in possession or control of such property, and was not so at the time when the bail proceedings were commenced. The presiding judge issued a rule nisi, requiring the plaintiff in the action to show cause why the prayer of the petition for discharge should not be granted. On the hearing the applicant for discharge filed what was termed a demurrer to the affidavit made for the purpose of requiring bail, on the grounds, that it did not set out a sufficient reason for requiring bail; that the property was not sufficiently described therein; and that bail-trover would not lie upon the facts therein alleged. She prayed to be discharged and that the affidavit be dismissed. This was overruled.

The applicant introduced evidence tending to show the following facts: She never had in her possession, custody, or control $700.70, the $700 being in the denominations of twenty and ten-dollar gold certificates, and the seventy cents being in silver, the property of Georgia Jeffers, as described in the affidavit; and she could not produce it. She had never seen it. She was unable to give bond in order to secure her release from imprisonment. She endeavored to get securities to go on her bond, but failed to do so. She was the wife of Clifford Harper, now deceased. He did not live with her. They lived together at intervals. He died on September 17, 1912, in Brunswick. He left about $730 deposited in a bank in that place. She has not the money in her possession. It is in the hands of her lawyers. "I did not get any money, but a check. I had to sign a paper for it. I did not see any money. It was a check for $730. My lawyers have that money. They have it with my permission. . . I did not get any seven hundred dollars and sev-

enty cents as described in that affidavit for bail. My lawyers did not either. We have never seen or had the money. He got a check for $730. I had to sign for it."

The plaintiff in the action of trover introduced an official of a bank in Milledgeville, who testified: Georgia Jeffers formerly had money on deposit in the bank. She instructed the witness to deliver her money to Clifford Harper, who was her grandson. The witness delivered it accordingly, paying to Harper $700.70, the seven hundred dollars being in gold certificates of the denominations of $10 and $20. Mrs. Jeffers said that she was sick and wished to give the money to her grandchildren. Harper carried her book to the bank, in order to obtain payment.

Georgia Jeffers, the plaintiff, testified as follows: Clifford Harper was her grandson. She was sick, and sent for the officer of the bank, and directed him to deliver to Harper all of her money. Harper went to the bank and drew it out. He kept it in his trunk, and did not deliver it to her. She never asked him for it until after he went to Brunswick, when she wrote to him to send her a part of it. He had some money in his trunk other than that which she gave him, but it was not much. He kept the money in his trunk until he went to Brunswick, when he took it with him. She did not give him permission to do so.

The presiding judge denied the application for discharge, and the applicant excepted.

*Sibley & Sibley,* for plaintiff in error.

*Hines & Vinson* and *D. S. Sanford,* contra.

LUMPKIN, J. (After stating the foregoing facts.)

1. The first question which arises is whether, after an affidavit has been filed in a trover case for the purpose of requiring bail, and the defendant has been arrested and imprisoned, and has applied to be discharged under section 5154 of the Civil Code, upon the hearing of such application the applicant can attack the affidavit as containing no sufficient description of the property to be seized, or for the forthcoming of which the defendant is required to give bond. A bail proceeding is not an essential part of a trover case. The plaintiff is not compelled to require bail of the defendant, but has the privilege of making the affidavit provided by the statute for that purpose. Such a proceeding constitutes a species of ancillary proceeding, in connection with the action of trover.

The Civil Code, § 5154, provides for an application to obtain a release from imprisonment under bail process, without giving security, when the defendant is neither able to give the security required by law nor to produce the property. Under the old law, if the defendant could not give security, he was compelled to remain in jail. The hardship of imprisonment until the case should be tried was the mischief. The act of 1879 (Acts 1878-79, p. 144), from which the code section above cited was codified, furnished the remedy. It did not seek to affect the power to proceed with the trover suit to a determination of the rights of the plaintiff upon the trial of the question of property, but to furnish a method by which a defendant should not be held unjustly in imprisonment until the trial. Upon such a hearing the main question of fact is as to the inability of the defendant to give security or produce the property. This has been referred to as the issue, in several decisions of this court. But none of them dealt with the question of whether the imprisonment should be continued if, on the face of the affidavit made by the plaintiff, it appeared that there was no sufficient ground for requiring bail, the production of the property, or imprisonment of the defendant. The statute states that the defendant, in applying for a release, shall state in his petition that he is neither able to give the security required by law nor to produce the property, "and can furnish satisfactory reasons for its non-production, and traverse the facts stated in the plaintiff's affidavit for bail." If the affidavit for bail describes no property sufficiently to be seized by the officer, or produced by the defendant, or for the production of which security could be properly required, was it the intention of the statute that the defendant must produce undescribed property or remain in jail until the final hearing of the trover suit? Would not such an affidavit as failed to supply a sufficient description of the property to furnish a basis for imprisonment of the defendant show a "satisfactory reason for its non-production," within the meaning of the statute?

In this case, when the hearing came on upon the question of discharging the defendant from imprisonment, the trover suit as a whole was not up for consideration, but the bail proceedings and the question of continuing the imprisonment of the defendant were before the court. We see no reason why the court could not then determine the question of the sufficiency of the affidavit as a ground

for further imprisonment. Whether the attack upon it, which seems to partake of the nature of both a demurrer and a motion, was accurately framed, is not very material. The point was raised, and the presiding judge passed upon it on its merits by overruling the demurrer and motion.

2. Having held that the point of lack of sufficiency of description contained in the affidavit filed for the purpose of requiring bail could be raised on the hearing of the petition for discharge, the next question is whether the description was sufficient to authorize imprisonment until bail should be given. In *McElhannon* v. *Farmers Alliance Warehouse &c. Co.,* 95 *Ga.* 670 (22 S. E. 686), it was held that a description of money sought to be recovered in an action of trover as being "three thousand five hundred dollars lawful money of the United States," was insufficient, and that the petition was demurrable. It was said that "The test of the sufficiency of such a declaration is, and should be, is the description of the chattels sued for so definite and distinct as to enable the court to seize them for restitution to the owner?" When the case was again before this court, an amendment had been made so as to add to the description the words, "lawful money of the United States, consisting of one hundred silver certificates of five dollars each, one hundred and fifty national bank notes, known as national currency, each for ten dollars, and seventy-five treasury notes of the United States, each for the sum of twenty dollars." It was held that this was good as against a demurrer. In the opinion Chief Justice Simmons said: "The description is sufficient to identify the property if found in the defendant's possession. Each particular class of bills or notes is described, the denominations of each class are given, and the number of bills or notes of each denomination. If this description is not sufficient, it would be a rare case in which money could be recovered in an action of trover; for few people who handle money remember the particular bank which issued it or the number of each particular bill or note; indeed few persons ever look at the name of the bank or the number of the bill or note; and in these busy days of commerce few persons keep their money in bags, so that it can be identified in that manner. If the sheriff, upon attempting to make a seizure of the property described in the writ, should find in the defendant's possession 100 silver certificates of five dollars each, 150 national bank

notes of $10 each, and 75 treasury notes of $20 each, lawful money of the United States, he would be justified in taking possession of the same." *Farmers Alliance Warehouse &c. Co.* v. *McElhannon,* 98 *Ga.* 394 (25 S. E. 558). It was mentioned, as an additional reason why the demurrer should be overruled, that the defendant had given bond for the forthcoming of the property, thus admitting the possession of money answering the description. But this additional reason was criticised in *Cooke* v. *Bryant,* 103 *Ga.* 727, 730-731 (30 S. E. 435). Beside the criticism there made, it might be inquired, on demurrer to the sufficiency of the allegations of a petition, how does the fact of the giving or not giving of a bond appear, unless alleged in the petition?

In *McLennan* v. *Livingston,* 108 *Ga.* 342 (33 S. E. 974), the petition in an action of trover described the property as "two hundred and seventy dollars in lawful money of the United States. . . Also, thirty dollars in lawful currency of the United States, the same being two ten-dollar bills and two five-dollar bills." It was held that the description was insufficient, and that a demurrer to the petition was properly sustained. This was clearly correct as to the description of the "two hundred and seventy dollars in lawful money of the United States." As to the description of a part of the money as "thirty dollars in lawful currency of the United States, the same being two $10 bills and two $5 bills," it was said that "this description is not nearly so distinct as that in the case in 98 *Ga.*" It is not so clear that the description last quoted differs greatly from that in the 98 *Ga.* But they were held to be distinguishable. Reference was again made to the fact that in the case in 98 *Ga.* a bond had been given for the forthcoming of the property, as a reason for overruling a demurrer to the declaration. But we have already seen that this additional reason for overruling the demurrer had previously been discredited.

But the description in the affidavit now before us does not measure up to that held to be sufficient in 98 *Ga.* It gives the amount of $700 in bills of the denominations of $20 and $10, but does not say how many there were of each or either. How many of each could the sheriff seize under this general description? It is too vague to furnish a basis for bail process.

3. The action to recover personalty, which is commonly called trover in this State, is not applicable to recovering a sum of

money which may be due and unpaid. Its purpose is to recover specific property, or for its conversion by the defendant. Bail process is permitted in order that security may be had for the forthcoming of the property, or, in default thereof, that the specific property may be seized, or, if the property can not be seized, the defendant may be imprisoned. Civil Code, § 5152. The statutory right on the trial to elect to take a verdict for the property or its value does not change the nature of an action of trover so as to make it the equivalent of an action of assumpsit. "An action of trover for the recovery of money must be based on a legal obligation on the part of the defendant to deliver specific money to the plaintiff." *Cooke* v. *Bryant,* supra.

The evidence in the present case showed, in brief, as follows: Harper, the husband of the defendant, obtained from a bank in Baldwin county, under authority from Georgia Jeffers, $700 in gold certificates of the denominations of $20 and $10, and seventy cents in silver. This occurred in the spring of the year. At the time Mrs. Jeffers, who was the grandmother of Harper, was sick, and he kept the money in his trunk, where he also had some money of his own, though not much. Some time later (the date does not appear) he went to Brunswick, in Glynn county, where he died on September 17 thereafter. He left $730 on deposit in a bank in that place. His widow (the defendant) and her attorney went to Brunswick, where she had to "sign a paper" for the money, and received a check for $730. Her attorney had charge of the proceeds with her consent at the time of the hearing. She never received or had bills of the character mentioned in the affidavit. The deposit of Harper was not identified with the money received by him in the spring, and what she received from the Brunswick bank was not the specific money which Harper had previously received from the other bank. This did not authorize the continued imprisonment of the defendant under bail process, and she should have been discharged.

*Judgment reversed. All the Justices concur.*