**In the Matter of Thomas Forrest NICHOLSON, a/k/a Tommy Nicholson, Debtor.**

**NATIONAL PREMIUM BUDGET PLAN CORPORATION, Plaintiff,**

v.

**Thomas Forrest NICHOLSON, Defendant.**

**Bankruptcy No. 82–03324A.**

**Adv. No. 82–2320A.**

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

Dec. 12, 1985.

John T. Ruff, Neely & Player, Atlanta, Ga., for plaintiff.

Herbert C. Broadfoot, II, Swift, Currie, McGhee & Hiers, Atlanta, Ga., for defendant.

**MEMORANDUM OF OPINION AND ORDER**

A.D. KAHN, Bankruptcy Judge.

Plaintiff filed the above-styled adversary complaint to determine the dischargeability of a debt pursuant to 11 U.S.C. §§ 523(a)(2) and (a)(4). It is before the Court on cross-motions for summary judgment. The Parties have jointly filed a Statement of Undisputed Material Facts which is quoted in part below.

I.

1. National Premium Budget Plan Corporation [Plaintiff herein] is a licensed insurance premium finance company in the business of financing insurance premiums pursuant to premium finance agreements with insureds whereby the

insureds promise to pay to National Premium the premium amount advanced by it to an insurance company, or an authorized insurance agent or broker.

2. Thomas Forrest Nicholson [Defendant-Debtor herein] is or has been a licensed "independent" insurance agent.

3. Nicholson was and is the president, managing officer, and sole shareholder of Nicholson Insurance Agency, Inc., a Georgia corporation.

4. On or about August 23, 1978, National Premium entered into a premium financing agreement with American Trailer Haul, a proposed insured, and T.F. Nicholson or "Nicholson Insurance Agency", as agent for the designated insurer and/or the insured....

5. The designated insurer was Commercial Standard Insurance Company, doing business in Ft. Worth, Texas, whose general authorized agent was Southern Insurance Underwriters, Inc., doing business in Atlanta, Georgia.

6. National Premium paid $19,890.00 to the order of "Nicholson Insurance Agency" by check dated September 13, 1978, representing the amount financed in connection with the designated insurance under the aforesaid premium finance agreement....

7. This check was marked "THIS CHECK IS IN PAYMENT OF A FINANCED INSURANCE PREMIUM."

8. During September 1978, Nicholson Insurance Agency, Inc. maintained three checking accounts, one each in Douglas County Bank, the Commercial Bank of Douglas County and the Trust Company Bank.

9. The aforesaid National Premium check in the amount of $19,890.00 was deposited in the account maintained with the Commercial Bank of Douglas County and was subsequently honored in due course.

10. Other National Premium funds paid to Nicholson or his agency were deposited in one or another of the three checking accounts maintained by Nicholson Insurance Agency, Inc.

11. Thomas Forrest Nicholson was the only licensed insurance agent employed by Nicholson Insurance Agency, Inc.

12. An insurance order was placed with Commercial Standard Insurance Company, via Southern Insurance Underwriters, for a policy of insurance covering American Trailer Haul to become effective September 15, 1978.

13. The downpayment [sic] for this policy in the amount of $10,710.00, the difference between the total premium in the amount of $30,600.00 and the amount of the aforesaid National Premium check, was never paid to Nicholson or the agency despite the provisions of the aforesaid premium finance agreement.

14. Nicholson or the agency and Southern Insurance Underwriters, Inc. transacted business on an "account current" basis. Insurance orders were debited to the agent's account for the amount of the premium and return or unearned premium amounts and commissions were credited to the agent's accounts. These accounting transactions were settled on a monthly basis.

15. Between August 23, 1978 and September 15, 1978, the agent's account with Southern Insurance Underwriters was debited for the original premium amount to reflect the American Trailer Haul request for insurance coverage.

16. Between August 23, 1978 and September 15, 1978, American Trailer Haul rejected the Commercial Standard insurance and obtained an insurance policy written by another insurance company, effective September 15, 1978.

17. Between August 23, 1978 and September 15, 1978, upon learning that coverage was placed with another company, Southern Insurance Underwriters cancelled the Commercial Standard policy on a flat-rate basis. The agent's account was credited with the amount of the earlier debit.

18. American Trailer Haul failed to make any payments to National Premium, the premium finance company, pur-

suant to the aforesaid premium finance agreement.

19. Pursuant to the aforesaid premium finance agreement, National Premium cancelled the Commercial Standard Insurance policy as evidenced by a letter to Commercial Standard Insurance Company from Robert Green, Vice President of National Premium....

20. Commercial Standard refused to forward to National Premium the return premium on the policy for the reason that the return premium had previously been credited by Southern Insurance Underwriters to Mr. Nicholson's agency account.

21. Upon learning that the Commercial Standard Insurance policy had been rejected by American Trailer Haul and that Mr. Nicholson's agency account was credited with the return premium, National Premium contacted Nicholson and demanded repayment.

22. Payments to National Premium were made in the amount of $12,338.15 in connection with this transaction.

23. The unpaid balance as a result of these transactions is $7,551.85.

24. The American Trailer Haul transaction was the only transaction between the parties in which a return premium arising out of the cancellation of an insurance policy, for which the initial premium was financed by National Premium, was not paid in full.

## II.

Plaintiff maintains that this debt for $7,551.85 is nondischargeable pursuant to 11 U.S.C. §§ 523(a)(2) and (a)(4). Each will be discussed separately below.

Section 523(a)(2) provides that a debt is nondischargeable if it is one for

obtaining money, property, services, or an extension, renewal, or refinance of credit, by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; or

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for obtaining such money, property, services, or credit reasonably relied; and

(iv) that the debtor cause to be made or published with intent to deceive.

It is clear that the debt in question does not fall under this exception to discharge. The undisputed facts as stated above reveal no fraudulent intent on the part of Defendant-Debtor, nor does Plaintiff in its Brief argue that the debt in question arose from a fraud perpetrated by Defendant-Debtor.

Section 523(a)(4) provides that a debt is nondischargeable if it is one for "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." First, the undisputed facts do not support a finding of embezzlement or larceny. Plaintiff has failed to present or even argue in its Brief that this debt was incurred through intentional wrongdoing by Defendant. However, § 523(a)(4) also includes defalcation while acting in a fiduciary capacity. Therefore, the Court must explore whether there existed a fiduciary relationship between Plaintiff and Defendant-Debtor at the time the debt arose.

Official Code of Georgia § 33–23–79(b) establishes fiduciary relationships between an insurance agent and an insured and between an insurance agent and an insurance company. It provides, in part, that

[a]ll funds representing premiums received or return premiums due the insured by any agent, broker, or solicitor shall be accounted for in his fiduciary capacity, shall not be commingled with his personal funds, and shall be promptly accounted for and paid to the insurer, insured, or agent as entitled to such funds.

**648**

Although it is evident that a premium financing company is not included in the above statutory provision, the contract entered into by Plaintiff, the proposed insured, *and* Defendant-Debtor included the following: "THE UNDERSIGNED INSURED: 1. Assigns to National [Plaintiff herein] as security for the total amount payable hereunder any and all unearned return premiums and dividends which may become payable under the policies listed in the schedule." Exhibit A attached to Statement of Undisputed Material Facts. The question then becomes whether, by virtue of this assignment clause, Plaintiff stepped into the shoes of the insured and the fiduciary relationship with Defendant-Debtor. If Plaintiff assumed such a position, then Defendant-Debtor had a fiduciary duty to pay the entire returned premium over to Plaintiff, and failure to do so would constitute a breach of that fiduciary duty. After consideration, the Court finds that the above assignment created a fiduciary relationship between Plaintiff and Defendant-Debtor. By reason of the assignment, Plaintiff had the same rights in the returned premium as did the insured. Defendant-Debtor was a party to the contract which contained the assignment. See Exhibit A attached to Statement of Undisputed Material Facts. Failure on the part of Defendant-Debtor to pay the returned premium over to Plaintiff, for whatever reason, was a breach of his fiduciary duty imposed upon him as an agent by O.C.G.A. § 33-23-79(b).

Therefore, there being no material facts in dispute, it is the finding of the Court that the debt in question is nondischargeable pursuant to § 523(a)(4).

### ORDER

In accordance with the reasoning above, it is the Order of the Court that Plaintiff's Motion for Summary Judgment be, and the same hereby is, GRANTED.

An appropriate judgment is entered contemporaneously herewith.