A95A0813. UNIFIED SERVICES, INC. v. HOME INSURANCE COMPANY et al.
A95A0814. HOME INSURANCE COMPANY et al. v. UNIFIED SERVICES, INC. et al.
A95A0815. SPENCER v. HOME INSURANCE COMPANY et al.
(460 SE2d 545)

POPE, Presiding Judge.

Plaintiff Home Insurance Company ("Home") and defendant Unified Services, Inc. ("USI") entered into a "Broker Agreement" in which Home agreed to provide insurance for USI's client and bill USI on a monthly basis. The agreement contemplated that USI would bill the client for the premiums plus a commission, and that USI would then remit the premiums to Home. Although this arrangement worked successfully for several years, in early 1992 USI failed to pay Home for its client's premiums, even though the client did pay USI. The client subsequently changed brokers and continued using Home as its insurer.

Home brought this suit for action on account/breach of contract and conversion, and USI counterclaimed for breach of contract and tortious interference with its business relations with its client. In addition to suing USI, Home sued defendants Spencer and Atkins, USI's principals, on an alter-ego theory. Defendants filed a motion to dismiss Home's conversion claim, and all the parties filed motions for summary judgment. The trial court's orders on these motions are the subject of these appeals: in Case No. A95A0813, defendants appeal the grant of summary judgment to Home regarding defendants' liability for breach of contract as well as Home's nonliability for tortious interference with business relations; in Case No. A95A0814, Home appeals the trial court's dismissal of its conversion claim; and in Case No. A95A0815, defendant Spencer appeals the trial court's denial of

his motion for summary judgment on Home's alter-ego theory.

### Case No. A95A0813

1. USI first contends that the trial court erred in granting summary judgment for Home on Home's action on account/breach of contract claim. It is undisputed that USI failed to remit premiums it owed to Home under the parties' agreement. USI nonetheless suggests that questions of fact remain because the parties subsequently reached a new agreement, in which Home allegedly agreed to retain USI's future commissions and apply them to the amount USI owed, and Home allegedly breached this new agreement.

Analytically, however, the possibility that Home breached the new agreement cannot negate USI's prior breach of the original agreement and thus does not preclude entry of partial summary judgment for Home on the issue of USI's debt on account/breach. It could affect the damages USI owes Home, of course, which is why the court only granted partial summary judgment rather than entering a final judgment. USI has a counterclaim against Home for the commissions allegedly owed it under the new agreement, and the court's partial summary judgment order did not affect this counterclaim. Thus, to the extent the jury at trial finds Home owes USI commissions, this amount will be offset against the amount USI owes Home.

2. USI also argues that the trial court erred in granting summary judgment against it on its counterclaim for tortious interference with business relations. To establish a cause of action for this tort, USI would have to show, among other things, that Home's actions induced USI's client not to continue its business relationship with USI. See *St. Mary's Hosp. of Athens v. Radiology Professional Corp.*, 205 Ga. App. 121 (2) (421 SE2d 731) (1992). Yet the representative of USI's client (a partnership) testified in his deposition that the client changed brokers not because of anything Home did, but because the client had a new majority partner involved in an ongoing relationship with another broker. Accordingly, the trial court did not err in granting summary judgment on USI's tortious interference counterclaim.

3. USI further asserts that the trial court should have delayed deciding the summary judgment motions until USI was able to take several additional depositions. The trial court had already denied USI's motion to extend discovery to allow it to take these depositions, however, and USI failed to enumerate the denial of this motion as error. In any event, the trial court, having already extended discovery three times, did not abuse its discretion in refusing to extend it yet again. See *Magliaro v. Lewis*, 203 Ga. App. 632 (5) (417 SE2d 395) (1992); Uniform Superior Court Rule 5.

*Case No. A95A0814*

4. In its cross-appeal, Home contends that the trial court erred in dismissing its tort-based cause of action for conversion (and its concomitant claim for punitive damages) for failure to state a claim. "A motion to dismiss is . . . not to be granted unless under the pleadings, construed in a light most favorable to the plaintiff, plaintiff can establish no set of facts that would entitle it to relief against the defendant. [Cits.]" *Wehunt v. ITT Business Communications Corp.*, 183 Ga. App. 560, 561 (2) (359 SE2d 383) (1987). Viewing Home's complaint (including the Broker Agreement) in a light most favorable to it, we cannot agree with the trial court's conclusion that USI's alleged conduct would have breached only contractual duties, and we therefore reverse the dismissal of the conversion count for failure to state a claim.

(a) While a tort action cannot be based on the breach of a contractual duty only, it can be based on conduct which, in addition to breaching a duty imposed by contract, also breaches a duty imposed by law. *Commercial Bank &c. Co. v. Buford*, 145 Ga. App. 213 (243 SE2d 637) (1978). "If there is no liability except that arising out of a breach of the express terms of the contract, the action must be in contract, and an action in tort cannot be maintained. Only where private duties arise from statute or flow from relations created by the contract, express or implied, may one elect to pursue [a tort action] for damages flowing from the exercise or failure to exercise that duty. [Cits.]" Id. at 214-215.

This case presents just the type of situation described. In failing to remit premium payments for the client to plaintiff, defendants not only breached their duties under the contract, but also breached statutory and fiduciary duties imposed by law. Under OCGA § 33-23-35 (b) (formerly OCGA § 33-23-79 (b)), any premiums received by a broker/agent must be accounted for by the broker/agent "in [its] fiduciary capacity," shall not be commingled with personal funds, and shall be promptly paid to the insurer.[1] The Broker Agreement states that USI is not Home's agent. But a party can be an agent for one purpose and not another, and the context of the statement that USI is not Home's agent indicates it was intended to mean that USI is not Home's agent for purposes of agreeing to insure a particular risk. In any case, OCGA § 33-23-1 (a) (3) (formerly OCGA § 33-23-40 (a) (3))

---

[1] The trial court held this statute was not intended to create a private cause of action, but this does not render the statute irrelevant to an evaluation of the broker/agent's duties. Cf. *Bank of Spalding County v. Pound*, 213 Ga. App. 324 (2) (444 SE2d 375) (1994) (court relies on OCGA § 33-23-35 (b) in holding that bank cannot use premium payments in broker/agent's account to offset broker/agent's debt to bank).

provides that anyone who receives money for transmission to the insurer for a contract of insurance is an agent, "anything in the application or contract . . . notwithstanding."

USI posits that it was not transmitting its client's premiums to Home; instead, the client had a contractual obligation to pay USI, and USI had an independent contractual obligation to pay Home, regardless of whether the client paid. This position, however, is belied by the Broker Agreement as well as common sense. Although USI quotes language from the Agreement suggesting it was obligated to pay Home even if the client did not pay it, the quote conveniently omits words which clarify that USI was *only* obligated to do so if it failed to exercise its option to notify Home of the nonpayment and turn the account over to Home for collection within 30 days. In other words, USI was not obligated to pay for a nonpaying client unless it chose to do so and accept the risk that the client might not pay.

"While an independent insurance agent or broker is normally considered the agent of the insured, it can also be a dual agent for both the insurer and the insured." *Byrne v. Reardon*, 196 Ga. App. 735, 736 (4) (397 SE2d 22) (1990). In *Byrne*, we held that where a broker collected premium payments from the insured, issued notices of policy expirations and handled accident reports, it had a fiduciary relationship with the insurer as well as the insured — and thus owed duties to the insurer as well as the insured which went beyond those expressed in the contract. Like the broker in *Byrne*, USI collected premium payments from the client, and, particularly in light of OCGA § 33-23-35 (b)'s pronouncement that a broker collects premium payments in its fiduciary capacity, this is enough to conclude that a fiduciary relationship arose from the relationship among the parties in this case. See *Quaif v. Johnson*, 4 F3d 950 (11th Cir. 1993) (applying Georgia law, Eleventh Circuit affirms bankruptcy court ruling that OCGA § 33-23-79 (b) creates fiduciary relationship between broker and insurer and broker breaches its fiduciary duty when it fails to remit collected premiums); accord *In re Nicholson*, 55 B.R. 645 (1985). In short, we hold that where parties A, B and C arrange that C will provide insurance to A, and A will give B money for the purpose of paying C, B owes fiduciary duties to both A and C.[2] Ac-

---

[2] *Morris v. National Western Life Ins. Co.*, 208 Ga. App. 443 (2) (430 SE2d 813) (1993) and *Faircloth v. A. L. Williams & Assocs.*, 206 Ga. App. 764 (1) (426 SE2d 601) (1992), actions brought by insurance salesmen to recover commissions allegedly owed them by insurance companies, are distinguishable since they do not fit this paradigm. Unlike the situation in this case, the clients in those cases did not pay the insurer for the purpose of having the insurer pay the salesman his commission; no portion of the payment was specifically designated for this purpose. Thus, the insurer's obligation to pay the commissions was based solely on contract and its breach could not give rise to a conversion action. Moreover, the unpaid commissions in *Morris* and *Faircloth* were less specific and identifiable than the un-

cordingly, the fact that the parties' relationship arises from a contract does not preclude the possibility of a tort claim if the elements of the claim are otherwise established. See also *Atlantic Mechanical Contractors v. Hurston*, 185 Ga. App. 511 (364 SE2d 638) (1988).

(b) "In order to present a cause of action for conversion an act of dominion over the personal property of another inconsistent with his rights . . . must be shown." (Citations and punctuation omitted.) *Hurston*, 185 Ga. App. at 511; see also *Stanford v. Otto Niederer & Sons, Inc.*, 178 Ga. App. 56 (1) (341 SE2d 892) (1986).

USI asserts that it could not have converted the client's premium payments because Home never gained title to those payments (i.e., the payments never became Home's personal property). The flip side to our conclusion that USI owed Home fiduciary duties with respect to premium payments, however, is that Home had an equitable interest in the payments as soon as the client made them. And actions inconsistent with *any* legal interest in personalty may give rise to a conversion claim; legal title to the personal property is not necessary. *Privitera v. Addison*, 190 Ga. App. 102 (3) (378 SE2d 312) (1989). Cf. also *Stanford*, 178 Ga. App. at 57 (where agent receives payment and is supposed to deduct commission and remit rest to principal, but instead uses full amount of payment for his own purposes, conversion is established).

(c) USI further contends that dismissal was warranted because money cannot be the subject of a conversion claim. But money can be the subject of a conversion claim as long as the allegedly converted money is specific and identifiable. *Adler v. Hertling*, 215 Ga. App. 769 (1 & 2) (451 SE2d 91) (1994); *Grant v. Newsome*, 201 Ga. App. 710 (1) (411 SE2d 796) (1991). Because the premiums paid by the client to USI were specifically earmarked for remittance to Home, they are sufficiently specific and identifiable to support a conversion action. Cf. *DCA Architects v. American Bldg. Consultants*, 203 Ga. App. 598 (2) (417 SE2d 386) (1992) (directed verdict on conversion claim reversed where subcontractor was entitled to certain percentage of fees collected by contractor on specified projects and contractor collected fees but failed to pay subcontractor).

For these reasons, Home's complaint stated a cause of action for conversion, and the trial court's dismissal of this claim is reversed.

### Case No. A95A0815

5. In this appeal, defendant Spencer argues that he should have been granted summary judgment with respect to Home's efforts to

---

remitted premiums here, and thus were probably not a proper subject for a conversion claim for this reason as well. See Division 4 (c).

pierce the corporate veil and hold him personally liable. There is evidence in the record, however, that Spencer and Atkins, the sole shareholders of USI: (1) transferred assets of USI to a newly formed corporation, without compensation to USI, right around the time USI was unable to pay Home; (2) wrote off as uncollectible a debt owed to USI by a partnership in which Spencer and Atkins were partners; (3) withdrew money from USI at will in lieu of salary; and (4) borrowed money from USI without paying interest. This evidence is sufficient to create a question of fact about whether the corporate veil should be pierced. See *Abbott Foods of Ga. v. Elberton Poultry Co.*, 173 Ga. App. 672 (2) (327 SE2d 751) (1985). Contrary to Spencer's assertion, his compliance with some corporate formalities does not preclude a piercing of the corporate veil. See *Custom Lighting &c. v. Hampshire Co.*, 204 Ga. App. 293 (2) (418 SE2d 811) (1992). Moreover, we note that to the extent a jury finds Spencer was actively involved in tortious conduct while acting on behalf of USI, he would be personally liable for that conduct anyway. See *DCA Architects v. American Bldg. Consultants*, 203 Ga. App. 598 (2), supra. Accordingly, summary judgment for Spencer was properly denied.

*Judgment affirmed in Case Nos. A95A0813 and A95A0815. Judgment reversed in Case No. A95A0814. Beasley, C. J., and Ruffin, J., concur.*

DECIDED JULY 10, 1995 —
RECONSIDERATION DENIED JULY 25, 1995 — 

*Chambers, Mabry, McClelland & Brooks, E. Speer Mabry III, Edwin L. Hamilton, R. Michael Malcom,* for Unified Services.

*Troutman Sanders, Thomas E. Campbell, Daniel S. Reinhardt,* for Home Insurance Company.

*King & Carragher, Kevin S. King, Joseph R. Carragher,* for Spencer.