## A02A0016. GEORGIA LOTTERY CORPORATION v. FIRST NATIONAL BANK OF GRADY COUNTY.
(560 SE2d 345)

BLACKBURN, Chief Judge.

In this case regarding the alleged conversion of lottery proceeds, Georgia Lottery Corporation (Lottery) appeals the trial court's grant of summary judgment to First National Bank of Grady County (Bank), contending that OCGA § 50-27-21 mandates a finding that the Bank disposed of lottery proceeds without authority, thereby converting them.[1] For the reasons set forth below, we reverse.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

*Matjoulis v. Integon Gen. Ins. Corp.*[2]

Viewed in this light, the record shows that two separate corporations, Pack & Sack Food Centers, Inc. and Pac-a-Sac Food Centers, Inc., (collectively Retailers) owned and operated a chain of convenience stores in Georgia. Both corporations contracted with the Lottery to be retailers of lottery tickets in 1993. After entering this contract, each of the Retailers opened a special lottery account at the

---

[1] The Lottery also made a motion for summary judgment, which the trial court denied.
[2] *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

Bank to hold proceeds from the sale of lottery tickets.

Joane M. Bishop, the Director of Operations for both of the Retailers, averred that each store commingled the proceeds from the sale of lottery tickets with the proceeds from the sale of general merchandise. These consolidated funds were then deposited in banks in the city where each individual store was located, and, afterward, the funds were transmitted to the headquarters of the Retailers, both of which were located in Cairo. Once there, the funds were forwarded to the Retailers' general accounts at the Bank. Then, when Bishop received information from the Lottery regarding its share of the proceeds from ticket sales, she would draw checks on the Retailers' general accounts and deposit them into the lottery accounts at the Bank. Thereafter, the Lottery would remove the funds from the accounts by an electronic transfer.

Sometime in late July or early August 1997, the Retailers informed the Lottery that they no longer wished to sell lottery tickets. Auditors for the Lottery determined that Pack & Sack owed a final balance of $91,390.72 and Pac-a-Sac owed $14,590.49. On August 11, 1999, checks were drawn on the general accounts of the Retailers in these respective amounts and deposited in the appropriate lottery accounts. Shortly thereafter, through the Bank's internal auditor, the Retailers requested a stop payment on these checks because they questioned the amounts requested by the Lottery. Sharon Wells, the Assistant Cashier for the Bank, testified that the stop payment on the lottery funds was requested by Bishop, who told Wells that she believed that the amount of funds requested by the Lottery might be incorrect.

David Fiorita, Manager of Financial Services for the Lottery in 1997, testified that, on August 12, 1997, the Lottery initiated a final electronic funds transfer on the lottery accounts of the Retailers. The next morning, Fiorita called the Bank to ensure that the funds had been transferred. Wells informed Fiorita that both drafts had cleared and that there was enough money in the general accounts to cover the drafts. A few hours later, Wells informed Fiorita that the drafts were being returned because the Retailers questioned the amount owed to the Lottery.

The Bank's records showed that the Retailers' checks actually were deposited into the lottery accounts on August 11, 1997. The following day, the Lottery's sweep of funds in the accounts is shown, and, on August 13, 1997, a reimbursement of the Lottery's sweep is indicated. Finally, on August 14, 1997, the records show the lottery funds being reversed out of that account. Wells testified that this was necessary because, despite her mistaken statement to Fiorita, there were insufficient funds in the Retailers' general accounts to cover the checks to the Lottery.

Charles Stafford, the President of the Bank, testified that he personally instructed his staff not to honor the checks to the Lottery. He stated that Bishop had told him that the Retailers expected a $200,000 refund from the Lottery. Based on this information, Stafford determined that the payments requested by the Lottery had to be erroneous. He stated: "I knew that was wrong and I wasn't going to pay that."

Contrary to the findings of the trial court, these facts mandate a finding that the Bank converted the Lottery's funds in violation of OCGA § 50-27-21. "Conversion is the unauthorized assumption and exercise of the right of ownership over personal property belonging to another." *GLW Intl. Corp. v. Yao.*[3]

OCGA § 50-27-21 (a) provides:

> All proceeds from the sale of the lottery tickets or shares shall constitute a trust fund until paid to the corporation either directly or through the corporation's authorized collection representative. A lottery retailer and officers of a lottery retailer's business shall have a fiduciary duty to preserve and account for lottery proceeds and lottery retailers shall be personally liable for all proceeds. Proceeds shall include unsold instant tickets received by a lottery retailer and cash proceeds of the sale of any lottery products, net of allowable sales commissions and credit for lottery prizes sold to or paid to winners by lottery retailers. Sales proceeds and unused instant tickets shall be delivered to the corporation or its authorized collection representative upon demand.

Based on the clear, unambiguous language of this statutory provision, it is clear that, at the moment that a lottery ticket is sold, the proceeds therefrom are held in trust by the retailer for the Lottery. In addition, OCGA § 50-27-21 (b) provides further:

> The corporation shall require retailers to place all lottery proceeds due the corporation in accounts in institutions insured by the Federal Deposit Insurance Corporation not later than the close of the next banking day after the date of their collection by the retailer until the date they are paid over to the corporation. At the time of such deposit, lottery proceeds shall be deemed to be the property of the corporation. The corporation may require a retailer to establish a single separate electronic funds transfer account where

---

[3] *GLW Intl. Corp. v. Yao*, 243 Ga. App. 38, 42 (3) (b) (532 SE2d 151) (2000).

available for the purpose of receiving moneys from ticket or share sales, making payments to the corporation, and receiving payments for the corporation. Unless otherwise authorized in writing by the corporation, each lottery retailer shall establish a separate bank account for lottery proceeds which shall be kept separate and apart from all other funds and assets and shall not be commingled with any other funds or assets.

The Bank's records, themselves, indicate that the funds owed to the Lottery were deposited into the Retailers' segregated lottery accounts. The statute unequivocally states that "[a]t the time of such deposit, lottery proceeds shall be deemed to be the property of the [Lottery]." OCGA § 50-27-21 (b). Therefore, once the funds had been deposited into the lottery account, neither the Retailers nor the Bank had any authority to reverse the Lottery's sweep of funds. Nevertheless, the Bank's president made the decision to remove funds from the Lottery's account and allow the Retailers to apply them to other debts.

The bottom line in this case is that, contrary to statutory mandates, the Bank prevented the Lottery from receiving its own property and allowed that property to be used for unauthorized purposes. This is the very essence of conversion, and the trial court erred by granting the Bank's motion for summary judgment. To the contrary, the trial court should have granted the Lottery's motion for summary judgment on its conversion claim.

*Judgment reversed. Johnson, P. J., and Miller, J., concur.*

DECIDED FEBRUARY 15, 2002.

*Thurbert E. Baker, Attorney General, Daniel M. Formby, Deputy Attorney General, John B. Ballard, Jr., Senior Assistant Attorney General, Shereen M. Walls, Assistant Attorney General, Owen, Gleaton, Egan, Jones & Sweeney, David C. Will*, for appellant.
*Jonathan K. Chason*, for appellee.