S02G1549. DECATUR AUTO CENTER, INC. v. WACHOVIA BANK, N.A.
(583 SE2d 6)

HUNSTEIN, Justice.

This case addresses the question whether the maker of a check can bring an action in conversion against its bank when the bank pays out on the check despite a stop-payment order.

Decatur Auto Center, Inc. issued Northside Sales & Leasing a check for $30,500 to be cashed once Northside obtained title to a Mercedes automobile that a Decatur Auto customer wanted to buy. The

---

[9] See Pindar, Georgia Real Estate Law & Procedure, § 19-180, p. 241 (5th ed. 1998).

check, number 1041, was drawn on Decatur Auto's commercial account at Wachovia Bank, N.A. Although Decatur Auto instructed Northside not to cash the check until otherwise ordered,[1] Northside disregarded Decatur Auto's instruction and immediately deposited the check into its account at Colonial Bank. For reasons not explained in the record, Colonial Bank immediately paid the $30,500 into Northside's account without first ascertaining that the check would clear. Check no. 1041 was dishonored for insufficient funds. Decatur Auto subsequently used other means to pay for the vehicle from Northside and Northside promised it would return check no. 1041 to Decatur Auto.

Instead, Colonial Bank continued to hold the check and contacted Wachovia almost daily over several months to ascertain whether there were sufficient funds in Decatur Auto's account to cover the check. Upon learning sufficient funds were present, Colonial Bank dispatched its representative, Gregory Cade, to a Wachovia branch where, by chance, Cade encountered Decatur Auto's president, Raimi Sanuse. Sanuse informed Cade that Northside had already been paid for the vehicle and check no. 1041 belonged to Decatur Auto. Sanuse immediately placed a stop-payment order on the check. Although Wachovia processed the stop-payment order and charged Decatur Auto for doing so, Wachovia admitted that it deliberately chose to honor Decatur Auto's check no. 1041, issued a check for $30,500 to Colonial,[2] and debited Decatur Auto's account for that amount. Wachovia then refused to reimburse Decatur Auto for the $30,500 debited from its account.

Decatur Auto brought suit against Wachovia to recover its $30,500, alleging the intentional tort of conversion as its cause of action[3] and seeking attorney fees. The trial court granted summary judgment to Decatur Auto[4] but the Court of Appeals reversed, applying the 104-year-old opinion in *Cooke v. Bryant*, 103 Ga. 727 (30 SE 435) (1898) to conclude that because Decatur Auto was not seeking to recover $30,500 in specific, ear-marked dollar bills, conversion was not a cause of action available to it. *Wachovia Bank v. Decatur Auto Center*, 255 Ga. App. 666 (566 SE2d 337) (2002). We granted Decatur Auto's petition for writ of certiorari to consider whether that holding was error. Because Georgia law recognizes that a specific check or

---

[1] Decatur Auto's customer was to pay for the Mercedes once Northside obtained title to the vehicle.

[2] Colonial Bank knew of the stop-payment order placed by Decatur Auto on the check.

[3] Although Decatur Auto's complaint did not specify the source of the $30,500 it sought, the admissions of the parties amended the pleadings to establish that the conversion claim was for Decatur Auto's check no. 1041 payable to Northside for $30,500. See OCGA § 9-11-15 (b).

[4] Decatur Auto was awarded $30,500, along with $12,757.75 in attorney fees.

negotiable instrument can be the subject of conversion, we reverse the Court of Appeals and affirm the trial court's grant of summary judgment to Decatur Auto.

> Conversion consists of an unauthorized assumption and exercise of the right of ownership over personal property belonging to another, in hostility to his rights; an act of dominion over the personal property of another inconsistent with his rights; or an unauthorized appropriation. . . . Any distinct act of dominion wrongfully asserted over another's property in denial of his right, or inconsistent with it, is a conversion.

(Citations and punctuation omitted.) *Maryland Cas. Ins. Co. v. Welchel*, 257 Ga. 259, 261 (1) (356 SE2d 877) (1987).[5] In this case, the Court of Appeals found that a cause of action for conversion would not lie, agreeing with Wachovia's argument that due to the fact that depositors' funds in a bank are all commingled into a general pool of deposits, no one individual depositor's funds could be converted because the specific money deposited cannot be separately identified. This position stems from the holding in *Cooke v. Bryant*, supra, that when a plaintiff utilizes conversion to recover a sum of money, the plaintiff must be able to identify the specific money that makes up the claimed sum. Accord *Carter v. Hornsby*, 68 Ga. App. 424 (23 SE2d 95) (1942). Thus, while a complaint seeking "three thousand five hundred dollars lawful money of the United States," was insufficient to state a cause of action for conversion, *McElhannon v. Farmers Alliance Warehouse &c. Co.*, 95 Ga. 670, 673 (22 SE 686) (1895), a complaint seeking " 'lawful money of the United States, consisting of one hundred silver certificates of five dollars each, one hundred and fifty national bank notes, known as national currency, each for ten dollars, and seventy-five treasury notes of the United States, each for the sum of twenty dollars' " stated a valid cause of action for conversion because "[e]ach particular class of bills or notes is described, the denominations of each class are given, and the number of bills or notes of each denomination." *Farmers Alliance Warehouse &c. Co. v. McElhannon*, 98 Ga. 394, 395 (25 SE 558) (1896).[6] See also *Harper v.*

---

[5] "Conversion is a tort for which the action of trover is maintainable. [Cits.]" *Carithers v. Maddox*, 80 Ga. App. 230, 231 (5) (55 SE2d 775) (1949). For a discussion of trover in the common law, see *Maryland Cas. Ins. Co.*, supra, 257 Ga. at 260 (1).

[6] By this holding, the Court demonstrated its willingness to modify common law conversion in light of modern commercial practices, explaining that

> [i]f this description is not sufficient, it would be a rare case in which money could be recovered in an action of trover, for few people who handle money remember the particular bank which issued it or the number of each particular bill or note; indeed

*Jeffers*, 139 Ga. 756 (78 SE 172) (1913).

In the instant case, however, Decatur Auto was not seeking to recover specific dollar bills or coins; rather, it was seeking to recover the value of its converted check no. 1041 in the face amount of $30,500. Conversion of a document, such as a check, promissory note, or negotiable instrument, includes "the full value of the intangible rights identified with" the document. Restatement 2d of Torts, § 242,[7] comment a. That a check (and the full value of the intangible rights identified with the check) may be a subject of conversion is a position recognized not only by § 242 of the Restatement 2d of Torts and most of our sister states, see Annot., Nature of Property or Rights Other Than Tangible Chattels Which May Be Subject of Conversion, 44 ALR2d 927 § 2, but also by Georgia law. "The law applicable to conversion of personal property applies to instruments." OCGA § 11-3-420 (a). Checks are one form of instrument included in this provision. OCGA § 11-3-104 (c), (f).

Although OCGA § 11-3-420 (a) is contained within the Uniform Commercial Code, this Court has looked to the UCC as analogous authority when determining whether a cause of action for conversion was sustainable. See *Trust Co. v. Refrigeration Supplies*, 241 Ga. 406, 408 (246 SE2d 282) (1978) (holding that sums of money contained within individual checks can be the subject matter of conversion actions where payment of the check was made without the endorsement of a joint payee). Even without reference to the UCC, case law has acknowledged that checks may be converted. E.g., *Barnett Bank v. Thurman*, 213 Ga. App. 820 (446 SE2d 529) (1994) (check deposited in bank and commingled with other deposits subject of conversion). Conversion of checks is actionable because checks designate specific amounts of money for use for specific purposes. Accord *Hudspeth v. A & H Constr.*, 230 Ga. App. 70 (2) (495 SE2d 322) (1997); *Unified Svcs. v. Home Ins. Co.*, 218 Ga. App. 85 (4) (c) (460 SE2d 545) (1995) (money is specific and identifiable to support claim in conversion where money is earmarked for specific purpose). See also *Adler v. Hertling*, 215 Ga. App. 769, 773-774 (2) (451 SE2d 91) (1994) ("[m]oney in an account is capable of being converted even if it does

---

few persons ever look at the name of the bank or the number of the bill or note; and in these busy days of commerce few persons keep their money in bags, so that it can be identified in that manner.
*Farmers Alliance Warehouse &c. Co.*, supra, 98 Ga. at 395-396.

[7] Restatement 2d of Torts, § 242 (America Law Institute, 1965) provides that
(1) Where there is conversion of a document in which intangible rights are merged, the damages include the value of such rights.
(2) One who effectively prevents the exercise of intangible rights of the kind customarily merged in a document is subject to a liability similar to that for conversion, even though the document is not itself converted.

not consist of specific coins or bills, so long as the money converted constitutes specific identifiable funds. [Cits.]"). Conversion is also available for specific amounts of money placed on deposit with a bank, see *Luck v. Regions Bank*, 248 Ga. App. 290 (546 SE2d 342) (2001); see also *Ga. Lottery Corp. v. First Nat. Bank*, 253 Ga. App. 784 (560 SE2d 345) (2002), and for overdrafts charged by a bank on existing accounts. *First Union Nat. Bank v. Davies-Elliott, Inc.*, 215 Ga. App. 498 (5) (452 SE2d 132) (1994).

Applying the rationale of these cases, we hold that Decatur Auto was not required to establish the existence of specific dollars or coins in order to recover for the conversion of its specific check no. 1041 and the full value of the intangible rights identified with that check.[8] Just as this Court recognized in 1895 that a plaintiff in a conversion action was no longer required to identify specific bills and coins because "in these busy days of commerce few persons keep their money in bags," *Farmers Alliance Warehouse &c. Co.*, supra, 98 Ga. at 396, so do we now recognize that a plaintiff in a conversion action does not need to identify the specific dollars and coins represented by the face value of checks and other negotiable instruments.

> "It has been said so often as to have become axiomatic that the common law is not immutable but flexible, and by its own principles adapts itself to varying conditions." [Cits.] The familiar statement that no rule of the common law can survive the reason on which it is founded is but a corollary of the greater truth that the common law springs from reason and necessity, shaping its rules to accomplish the ends of justice, in the light of usage and custom. [Cits.]

*Hubert v. Harpe*, 181 Ga. 168, 176-177 (182 SE 167) (1935). The judgment of the Court of Appeals is accordingly reversed and all prior precedents that can be read as contrary to our holding are hereby overruled.

*Judgment reversed. All the Justices concur, except Benham, J., who dissents.*

---

[8] Contrary to the Court of Appeals' opinion, Decatur Auto's check no. 1041 for $30,500 was not an intangible species of property such as the claim for commissions in *Mgmt. Compensation Group/Southeast v. United Security Employee Programs*, 194 Ga. App. 99 (4) (389 SE2d 525) (1989) and *Hodgskin v. Markatron, Inc.*, 185 Ga. App. 750 (1) (365 SE2d 494) (1988) or the insurance benefits claimed under a policy in *Lincoln Nat. Life Ins. Co. v. Davenport*, 201 Ga. App. 175 (410 SE2d 370) (1991). These cases recognize that a cause of action for conversion "does not lie on account of a mere failure to pay money due under a contract. [Cits.]" *Morris v. Nat. Western Life Ins. Co.*, 208 Ga. App. 443, 445 (2) (430 SE2d 813) (1993). Thus, the Court of Appeals' reliance upon *Mgmt. Compensation Group/Southeast*, supra, was misplaced.

DECIDED JUNE 9, 2003 —
RECONSIDERATION DENIED JULY 14, 2003.

*Mason, Harris & Bahr, William P. Mason, Brian J. Harris*, for appellant.

*Gray & Gilliland, Charles Ratz, Garland, Samuel & Loeb, Edward T. M. Garland, Spix, Krupp & Reece, Mark V. Spix*, for appellee.

*McKenney & Froelich, Jerome J. Froelich, Jr., David M. Kupsky*, amici curiae.