A10A1844. TREY INMAN & ASSOCIATES, P.C. v. BANK OF AMERICA, N.A.

(702 SE2d 711)

BLACKBURN, Senior Appellate Judge.

In this civil action, Bank of America, N.A. (the "Bank") sued Trey Inman & Associates, P.C. ("TIA") for conversion, alleging that TIA, while acting as the closing attorneys on a sale of property in which the Bank had a secured interest, wrongfully disbursed a portion of the sales funds to the seller of the property instead of disbursing all of the funds to the Bank. Following the grant of

summary judgment to the Bank, TIA appeals, arguing that it is not liable for conversion because (i) it followed the Bank's payoff instructions, (ii) the Bank's claim is barred by North Carolina law, and (iii) the Bank failed to demonstrate the elements required for a conversion claim. For the reasons set forth below, we affirm.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c); *Britt v. Kelly & Picerne, Inc.*[1] "On appeal from the grant or denial of a motion for summary judgment, we review the evidence de novo, and all reasonable conclusions and inferences drawn from the evidence are construed in the light most favorable to the nonmovant." *McCaskill v. Carillo.*[2]

So viewed, the record shows that in January 2005, the Bank loaned $10 million to Paul Meng and a group of home builders, including Brookchase Builders, which were closely associated with Meng and which conducted business under the names of Ridgeland Homes, Inc., Scenic Homes, Inc., and Creekwood Homes, Inc. (collectively the "Meng defendants"). The loan was modified and extended several times and was secured by numerous deeds of trust (containing dragnet clauses) held by the Bank, including a deed of trust for property identified as the Spencer Heights Subdivision in Gaston County, North Carolina. That deed, in relevant part, provided:

> NOW THEREFORE, in consideration of the Indebtedness herein recited, and in further consideration of the premises and for the purposes herein recited, and to secure the payment, performance and observance by Grantor of the covenants and conditions contained herein, in the Note, the Loan Agreement and all other Loan Documents (defined below), Grantor does hereby grant, convey, bargain, sell, transfer, assign and set over to Trustee and Trustee's successors and assigns, with GENERAL WARRANTY TITLE, all of the following described land, real property interests, buildings, improvements, fixtures, appurtenances and other personal property: . . . (d) All proceeds (cash or non-cash) of or arising from the properties, rights, titles and interests referred to in paragraphs a, b, and c above, including but not limited to proceeds of any sale, lease or other disposition thereof. . . .

---

[1] *Britt v. Kelly & Picerne, Inc.*, 258 Ga. App. 843 (575 SE2d 732) (2002).

[2] *McCaskill v. Carillo*, 263 Ga. App. 890 (589 SE2d 582) (2003).

The dragnet clause[3] in that same deed further provided:

> This Deed of Trust secures and enforces the payment and performance of the Loan Agreement, the Note and the other Loan Documents, and all Indebtedness, liabilities, duties, covenants, promises and other obligations whether joint or several, direct or indirect, fixed or contingent, liquidated or unliquidated, and the cost of collection of all such amounts, owed by Grantor to Beneficiary now or hereafter incurred or arising pursuant to or permitted by the provisions of the Loan Documents.

The loan eventually matured in October 2007; however, the Meng defendants failed to pay at that time and later refused to pay despite demands from the Bank that they do so.

TIA is a real estate law firm that handled real estate closings for several of the Meng defendants. On March 28, 2008, TIA conducted a closing at its Charlotte, North Carolina office for Lot 28 of the Spencer Heights Subdivision between Brookchase Builders as the seller and Endia Johnson (a nonparty to this litigation) as the buyer. As part of the closing, TIA requested a payoff statement from the Bank, showing the debt owed by Brookchase Builders to the Bank for that specific lot. In response, the Bank provided a payoff statement to TIA, which stated: "Principal Balance: $159,181.20, Interest accrued to 03/28/2008: $1,485.69, Total: $160,666.89 or 100% Net Sales Proceeds whichever is greater **." Additionally, the statement contained the following specific instruction: "** Please Note — payoff is greater of Net Sales Proceeds or Total Payoff Quote Amount. NO FUNDS TO BE DISBURSED TO SELLER."

At the closing, TIA received a lump sum payment from the buyer's lender in the amount of $248,516.77. Subsequently, TIA disbursed $160,852.60 to the Bank via wire transfer. However, contrary to the Bank's instructions in the payoff statement, TIA disbursed $76,122.31, via wire transfer, to Brookchase Builders. Upon learning that TIA had disbursed part of the sale proceeds for the Spencer Heights Lot 28 property to Brookchase Builders, the Bank demanded that the $76,122.31 be returned. Claiming that the funds were no longer in its possession, TIA refused the Bank's request.

---

[3] Dragnet or open-end clauses in deeds are used to secure any and all other indebtedness between grantors and grantees. Under Georgia law, deeds to secure debt containing such clauses continue to be effective so long as there exists indebtedness between the grantor and the grantee. See *Martin v. Fairburn Banking Co.*, 218 Ga. App. 803, 804 (3) (463 SE2d 507) (1995).

On April 18, 2008, the Bank filed suit against the Meng defendants for their failure to repay the loan. In its complaint, the Bank also named TIA as a defendant, alleging a conversion claim against the law firm for its disbursement of the $76,122.31 in funds for the Spencer Heights Lot 28 property to Brookchase Builders. The Meng defendants answered the Bank's complaint, filed a counter-claim against the Bank, and filed a cross-claim against TIA, alleging that TIA had wrongfully held funds in escrow that were owed to the Meng defendants. TIA answered and later filed a cross-claim against the Meng defendants (specifically Brookchase Builders), alleging breach of contract in connection with the sale of the Spencer Heights Lot 28 property.

In March 2009, the Bank filed a motion for summary judgment as to its claims against the Meng defendants. A few months later, TIA filed a motion for summary judgment as to its cross-claim against the Meng defendants for breach of contract and filed a separate motion for summary judgment on the Bank's conversion claim. On September 10, 2009, the trial court held a hearing on the Bank's and TIA's motions for summary judgment. At the conclusion of the hearing, the trial court granted summary judgment to the Bank on its claims against the Meng defendants and to TIA on its cross-claim against the Meng defendants. Additionally, the trial court denied TIA's motion for summary judgment on the Bank's conversion claim and noted that it would be inclined to grant summary judgment in the Bank's favor on its conversion claim, if the Bank filed a motion on the issue.

On September 23, 2009, the trial court issued two orders, in which it confirmed what it had announced at the September 10 hearing, by granting summary judgment in favor of the Bank on its claims against the Meng defendants and by denying summary judgment to TIA on the Bank's conversion claim. TIA did not seek an interlocutory appeal of that denial. In the meantime, the Bank filed a motion for summary judgment as to its conversion claim against TIA. The trial court held a hearing on the Bank's motion, and on October 26, 2009, it issued an order granting summary judgment to the Bank on its conversion claim. In a separate order issued on that same date, the trial court granted summary judgment in favor of TIA on its cross-claim against the Meng defendants. TIA did not file a notice of direct appeal of the order granting summary judgment to the Bank on its conversion claim. However, on November 24, 2009, the Meng defendants filed a notice of appeal of the order granting summary judgment to TIA on its cross-claim, and within 15 days of that filing, TIA filed a notice of cross-appeal of the order granting summary judgment to the Bank on its conversion claim. On June 10, 2010, the Meng defendants withdrew their appeal, but TIA main-

tained its cross-appeal, which we now address.

1. Although the Bank did not file a separate motion to dismiss TIA's cross-appeal, it contends in its appellee's brief that this Court lacks jurisdiction because TIA's cross-appeal cannot stand on its own merit following the dismissal of the Meng defendants' direct appeal. We disagree.

> If this Court finds that it has no jurisdiction over an appeal, it has the authority to dismiss the appeal on its own motion. Our jurisdiction is granted by Ga. Const. 1983, Art. VI, Sec. V, Par. III, and defined by statute. An appeal which does not fall within this Court's jurisdiction must be dismissed for lack of jurisdiction.

(Citations and footnotes omitted.) *Standridge v. Spillers*.[4] "Although under OCGA § 5-6-48 (e), a cross-appeal may survive the dismissal of the main appeal, this is true only where the cross-appeal can stand on its own merit." (Punctuation omitted.) *Patel v. Ga. Power Co.*[5] In *Patel*, we interpreted this to mean that we must have "independent jurisdiction" over the cross-appeal either as a final judgment or as an application for an interlocutory or discretionary appeal. Id. "This [C]ourt has no jurisdiction to entertain a cross-appeal which must derive its life from the main appeal." (Punctuation omitted.) *Jones Roofing &c. Co. v. Roberts*.[6] However, in this matter, the trial court's grant of summary judgment to the Bank on its conversion claim against TIA was directly appealable under OCGA § 9-11-56 (h). See *Studdard v. Satcher, Chick, Kapfer, Inc.*[7] (direct appeals may be taken from orders granting summary judgment). Thus, TIA's cross-appeal of that grant of summary judgment can stand on its own merit. Furthermore, because we have appellate jurisdiction to review the grant of summary judgment in favor of the Bank on its conversion claim, we also have jurisdiction pursuant to OCGA § 5-6-34 (d) to review the denial of TIA's motion for summary judgment on that same issue. See *Roberts v. Windsor Credit Svcs.*[8]

2. TIA contends that the trial court erred in granting summary judgment to the Bank on its conversion claim because TIA followed the Bank's payoff instructions. We disagree.

As previously noted, the payoff statement that the Bank provided to TIA for the Spencer Heights Lot 28 property stated:

---

[4] *Standridge v. Spillers*, 263 Ga. App. 401, 402-403 (1) (587 SE2d 862) (2003).

[5] *Patel v. Ga. Power Co.*, 234 Ga. App. 141, 142 (2) (505 SE2d 787) (1998).

[6] *Jones Roofing &c. Co. v. Roberts*, 179 Ga. App. 169, 170 (2) (345 SE2d 683) (1986).

[7] *Studdard v. Satcher, Chick, Kapfer, Inc.*, 217 Ga. App. 1, 2 (456 SE2d 71) (1995).

[8] *Roberts v. Windsor Credit Svcs.*, 301 Ga. App. 393, 395 (1) (687 SE2d 647) (2009).

"Principal Balance: $159,181.20, Interest accrued to 03/28/2008: $1,485.69, Total: $160,666.89 or 100% Net Sales Proceeds whichever is greater **", and also contained the following instruction: "** Please Note — payoff is greater of Net Sales Proceeds or Total Payoff Quote Amount. NO FUNDS TO BE DISBURSED TO SELLER." However, upon receiving funds totaling $248,516.77 from the buyer, TIA disbursed only $160,852.60 to the Bank and disbursed the $76,122.31 surplus to the seller. Thus, TIA failed to follow the payoff statement's instructions by not disbursing to the Bank the greater of the funds, which were the net sales proceeds, and by disbursing a portion of the net sales proceeds (the surplus) to the seller.

3. TIA contends that the trial court's grant of summary judgment in favor of the Bank on its conversion claim was in derogation of two applicable North Carolina statutes, N.C. Gen. Stat. §§ 45-36.7 (g) and 45-36.8 (b). Even assuming North Carolina law controls in this matter, we disagree.

N.C. Gen. Stat. § 45-36.7 (g) provides:

> A secured creditor may not qualify a payoff amount or state that it is subject to change before the payoff date unless the payoff statement provides information sufficient to permit the entitled person or the person's authorized agent to request an updated payoff amount at no charge and to obtain that updated payoff amount during the secured creditor's normal business hours on the payoff date or the immediately preceding business day.

TIA contends that the Bank's instruction in the payoff statement that no funds be disbursed to the seller constituted an improper qualification of the payoff amount under N.C. Gen. Stat. § 45-36.7 (g). However, TIA does not cite to any North Carolina case authority in support of its argument, and we see no reason for construing the Bank's proscription on disbursements of funds to the seller as a qualification of the payoff amount. Thus, we find that N.C. Gen. Stat. § 45-36.7 (g) is not applicable to this matter.

We also hold that N.C. Gen. Stat. § 45-36.8 (b) is similarly inapplicable. That statute provides: "A secured creditor that sends a payoff statement containing an understated payoff amount may not deny the accuracy of the payoff amount as against any person that reasonably and detrimentally relies upon the understated payoff amount." TIA argues that it detrimentally relied on the Bank's payoff amount of $160,666.89 and therefore was protected by the statute against the Bank's claim that it was owed the net sale proceeds. However, the payoff amount provided in the Bank's payoff statement was not understated, and the Bank has never denied its

accuracy. Rather, the Bank's clear instructions were that it was to receive the net sale proceeds if those proceeds were greater than the stated payoff amount, which they were. Consequently, N.C. Gen. Stat. § 45-36.8 (b) is inapplicable here.

4. TIA contends that the trial court erred in granting summary judgment to the Bank, arguing that the Bank failed to demonstrate the elements required for a conversion claim. Specifically, TIA argues that the Bank failed to show that TIA was in possession of the allegedly converted funds and that the funds were the proper subject of a conversion claim. We disagree.

> Conversion consists of an unauthorized assumption and exercise of the right of ownership over personal property belonging to another, in hostility to his rights; an act of dominion over the personal property of another inconsistent with his rights; or an unauthorized appropriation.

(Punctuation omitted.) *Maryland Cas. Ins. Co. v. Welchel*.[9] Moreover, "[i]t is immaterial that such dominion was exercised in good faith, for [w]hoever meddles with another's property, whether as principal or agent, does so at his peril, and it makes no difference that in doing so he acts in good faith." (Punctuation omitted.) Id. "In order to establish a claim for conversion, the complaining party must show (1) title to the property or the right of possession, (2) actual possession in the other party, (3) demand for return of the property, and (4) refusal by the other party to return the property." (Punctuation omitted.) *Internal Medicine Alliance v. Budell*.[10]

TIA argues that because it disbursed the disputed funds to Brookchase Builders at the conclusion of the closing for the Spencer Heights Lot 28 property, the Bank has failed to demonstrate that TIA has actual possession of those funds. However,

> [a] secured creditor has a right of action for conversion if property subject to its security interest *is disposed of without the creditor's authorization*. The elements of such a claim include the showing of a valid security interest in the debtor's property, disposition of that property, absence of the creditor's authorization for the disposition, and resulting damage to the creditor.

---

[9] *Maryland Cas. Ins. Co. v. Welchel*, 257 Ga. 259, 261 (1) (356 SE2d 877) (1987).
[10] *Internal Medicine Alliance v. Budell*, 290 Ga. App. 231, 239 (5) (659 SE2d 668) (2008).

(Emphasis supplied.) *William Goldberg & Co. v. Cohen.*[11] Here, TIA disposed of the surplus[12] from the net sales proceeds of property, in which the Bank held a security interest, by disbursing those funds in a manner that was prohibited by the Bank's explicit instructions. Thus, the Bank's conversion claim is not defeated by the fact that TIA no longer possesses the disputed funds.

TIA further argues that the Bank's conversion claim in this matter fails because such a claim is not the appropriate means by which to recover intangible money. TIA is correct that "[t]angible personalty or specific intangible property may be the subject for an action for conversion, but as fungible intangible personal property, money, generally, is not subject to a civil action for trover with an election for damages for its conversion." *Taylor v. Powertel, Inc.*[13] However, exceptions to this common law rule exist. In *Decatur Auto Center v. Wachovia Bank,*[14] our Supreme Court held that checks and other negotiable instruments can be the subject of a conversion claim. In its holding, the Supreme Court reasoned that "[c]onversion of checks is actionable because checks designate specific amounts of money for use for specific purposes." Id. at 820. The Supreme Court further noted that "[c]onversion is also available for specific amounts of money placed on deposit with a bank and for overdrafts charged by a bank on existing accounts." (Citations and punctuation omitted.) Id. at 821.

Applying the rationale employed in *Decatur Auto Center* to this case, we hold that the $76,122.31 in funds that TIA disbursed to Brookchase Builders via wire transfer was specific and identifiable and therefore was a proper subject for the Bank's conversion claim. The Supreme Court of Georgia recognized in 1896 that a plaintiff in a conversion action was no longer required to identify specific bills and coins because in these busy days of commerce, few persons keep their money in bags. *Farmers Alliance Warehouse &c. v. McElhannon.*[15] In 2003, that same court recognized "that a plaintiff in a conversion action does not need to identify the specific dollars and coins represented by the face value of checks and other negotiable instruments." *Decatur Auto Center*, supra, 276 Ga. at 821. In this day and age when funds are commonly transferred via wire and other electronic means, we see no logical reason for treating specific and identifiable funds that are transferred electronically, such as

---

[11] *William Goldberg & Co. v. Cohen*, 219 Ga. App. 628, 640 (7) (a) (466 SE2d 872) (1995).

[12] Given the dragnet clause contained in the deed of trust, the surplus was owed to the Bank.

[13] *Taylor v. Powertel, Inc.*, 250 Ga. App. 356, 358-359 (2) (551 SE2d 765) (2001).

[14] *Decatur Auto Center v. Wachovia Bank*, 276 Ga. 817, 821 (583 SE2d 6) (2003).

[15] *Farmers Alliance Warehouse &c. v. McElhannon*, 98 Ga. 394, 396 (25 SE 558) (1896).

those at issue here, differently from checks. Accordingly, the trial court did not err in granting summary judgment to the Bank on its conversion claim against TIA.

5. Given our holding that the trial court did not err in granting summary judgment to the Bank on its conversion claim against TIA, we further hold that the trial court did not err in denying TIA's motion for summary judgment on this same issue.

*Judgment affirmed. Barnes, P. J., and Senior Appellate Judge William LeRoy McMurray, Jr., concur.*

DECIDED OCTOBER 13, 2010.

*Lisa B. Perlstein*, for appellant.
*Miller & Martin, William A. DuPre IV*, for appellee.