**SECOND DIVISION**
**RICKMAN, C. J.,**
**MILLER, P. J., PIPKIN, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**March 14, 2023**

# In the Court of Appeals of Georgia

A22A1604. A CRYSTAL ENTERPRISES, ACE, LLC v. THE RIVER WEST CONDOMINIUM ASSOCIATION, INC.

MILLER, Presiding Judge.

A Crystal Enterprises, Ace, LLC ("Ace") appeals from the trial court's order granting summary judgment to the River West Condominium Association ("Association") on the Association's claims for unpaid monthly assessments and other fees and on Ace's counterclaims for trover, conversion of funds, and fraud. Ace contends that summary judgment was inappropriate because there are genuine disputes of material fact, including whether Ace owes the Association any money, whether the Association falsified records to create delinquencies, and whether the Association wrongfully removed Ace's leasing permit from its files and thereby

prevented Ace from leasing its units. For the following reasons, we affirm the trial court's ruling.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law[.]" OCGA § 9-11-56 (c). "We review the grant or denial of a motion for summary judgment de novo, and we must view the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmovant." (Citation and punctuation omitted.) *Woodcraft by MacDonald, Inc. v. Ga. Cas. & Surety Co.*, 293 Ga. 9, 10 (743 SE2d 373) (2013).

So viewed, the record shows as follows. Ace owns several condominium units in the River West community and is a member of the River West Condominium Association. Pursuant to the Association's Declaration, owners must pay an assessment fee each month. In February 2016, the Superior Court of Fulton County entered a judgment concerning three properties owned by Ace – 1101, 1106, and 1108 River Green Drive – which required Ace to pay a total of $16,531.58 and granted the Association the right to foreclose on its statutory liens on the properties. In August 2016, the superior court entered a similar judgment concerning another

2

property owned by Ace, 1110 River Green Drive, which required Ace to pay $38,681.20.

In January 2017, Ace paid the Association a total amount of $26,813.03, thereby satisfying the February 2016 judgment regarding Units 1101, 1106, and 1108 and paying the assessments and fees that had come due on those units since the judgment was entered. In January 2019, after Ace sold Unit 1106, Ace paid the Association $49,209.76, thereby paying off assessments and fees that had accrued on Unit 1106 between 2017 and the sale, satisfying the August 2016 judgment regarding Unit 1110, and paying assessments and fees that had come due on Unit 1110 since the judgment was entered.

The Association filed the current action in September 2019, raising claims as to 1108 River Green Drive. The Association alleged that as of August 1, 2019, Ace owed $9,103.37 in past-due assessments plus $706.10 in late fees. The Association sought a monetary judgment, foreclosure of the statutory lien it held on the property, and attorney fees. As an exhibit to the complaint, the Association submitted a statement of account for 1108 River Green, showing assessments, late fees, and interest that accrued between May 2017 and December 2019. The exhibit shows that in May 2017, Ace paid the regular assessment of $361.23 but did not pay the specific

3

assessment of $200. In subsequent months, Ace again paid the regular assessment fee but did not pay the $200 specific assessment. After February 2018, Ace did not make any payments..

Ace filed an answer and verified counterclaims, denying that it owes the Association any money and raising counterclaims for trover (based on the Association's removal of Ace's leasing permits), conversion (based on the Association's alleged movement of funds out of "Ace's HOA account"), fraud (based on several alleged actions), punitive damages, and attorney fees.

The parties engaged in litigation, including a failed attempt at mediation, until February 2022 when the Association filed a motion for summary judgment. In support of its motion, the Association argued that Ace has no legal excuse for failing to pay the validly-levied condominium assessments and that Ace's counterclaims fail as a matter of law. According to an affidavit from the Association's attorney and an accompanying statement of account, as of February 2022 the Association had incurred $37,798 in attorney fees, $697.54 in litigation expenses, and $215 in court costs while pursuing the instant action. Additionally, according to an affidavit from the community's property manager, as of February 2022 Ace owed $18,635.90 in unpaid assessments, late fees, and water usage fees plus $3,384.57 in interest.

The trial court granted the Association's motion, awarding it $60,731.01 (the sum of the amounts referenced in the Association's affidavits) and decreeing that the Association can foreclose its statutory lien on 1108 River Green. Ace then filed this appeal, challenging the trial court's judgment on a variety of grounds.[1] After careful consideration, we affirm the trial court's judgment.

1. Ace contends that summary judgment on the Association's claims was improper because there is conflicting evidence as to whether Ace owes money to the Association and whether the Association falsified records and delayed recording payments so as to make Ace subject to late fees and other penalties. In support of this contention, Ace points to statements it made in its verified answer – in which Ace denied that it owes the Association money – and the affidavit of Crystal Adams, Ace's Managing Member, in which Adams averred that the Association's records were missing payments Ace had made, that the Association's ledgers showed that

---

[1] We note that Ace has failed to comply with our Court Rules regarding citations to the record. Pursuant to Rule 25 (d) (2), citations to an electronic record, like the one in this case, "should be indicated by the volume number of the electronic record and the PDF page number within that volume (Vol. Number – PDF Page Number; for example, V2-46)." Instead of following this convention, Ace's citations to the record refer to the pleading's Index number followed by the exhibit number or paragraph number. Thus, rather than referring to V3-132, Ace refers to "R.76 ¶¶ 13, 14." Ace's failure to follow the format required by our Rules has hampered our ability to review this case in a timely manner.

many payments were not deposited until nearly two weeks after they were received, which caused late penalties, and that the Association added unsubstantiated moving fines, water bills, and attorney fees to the ledgers, which increased the alleged delinquency. The exhibits referred to in Adams's affidavit, however, do not establish that Ace made payments during the time period that is relevant to this case because they relate to billing entries and payments made in February 2017 or earlier, while the issues in this case concerns amounts that came due in May 2017 and later. Further, to the extent Ace is alleging that the 2016 judgments were miscalculated, such an argument is precluded by the doctrine of res judicata. See *Rose v. Household Finance Corp.,* 316 Ga. App. 282, 283 (1) (728 SE2d 879) (2012) (where a previous suit resulted in a money judgment in favor of the creditor, the doctrine of res judicata barred a debtor from pursuing a second lawsuit challenging the creditor's method of calculating interest). Thus, Ace has not shown there is a genuine issue of material fact as to whether it owed money to the Association, and so we affirm the trial court's grant of summary judgment on the Association's collection claims.

2. With respect to counterclaims Ace raised against the Association, Ace contends that the trial court erred in granting summary judgment to the Association on its counterclaims for trover, conversion, and fraud because (1) there is evidence

6

the Association removed Ace's leasing permits and thereby denied Ace the opportunity to lease its units; (2) there is evidence the Association used deception and false statements to impose unwarranted penalties and fees and "take" funds from Ace's HOA accounts; and (3) there is evidence the Association used altered records and deception to force Ace to pay amounts it did not owe. Lastly, Ace contends that it is entitled to recover punitive damages and OCGA § 13-6-11 attorney fees. None of these arguments are persuasive.

*(a) Trover*

Ace does not have a cognizable claim for trover based on the Association's removal of its leasing permits from its HOA files. To prevail on an action for trover, a plaintiff must show that "(1) it has title to the property or a right of possession; and (2) the defendant was in possession of the property when the action was brought and, in its answer, denied that the plaintiff had title to, or the right to possess, the property." *Thomas Mote Trucking, Inc. v. PCL Constructors, Inc.*, 246 Ga. App. 306, 309 (3) (540 SE2d 261) (2000).

Here, Ace has not established that it was entitled to possess the papers the Association allegedly removed from its files. More importantly, the record clearly establishes that in the River West community, an owner's authority to lease his unit

is dependent not on his possession of a tangible certificate, but, rather, on his receipt of permission from the Board of Directors,[2] and nothing in the record suggests the presence of a paper permit in an owner's HOA file has any effect on an owner's authority to lease his unit. The Association's alleged removal of a document from Ace's HOA files was, therefore, not an action that deprived Ace of any property it had the right to possess, and the trial court correctly concluded that Ace's action for trover fails as a matter of law.

*(b) Conversion & Fraud*

Ace's claims for conversion and fraud are based on its assertion that the Association misapplied payments it made, imposed unwarranted late fees and other penalties, and otherwise caused Ace to pay amounts it did not owe. The application

---

[2] Specifically, Section 15 (a) of the Declaration provides:
Owners desiring to lease their Units may do so only if they have applied for and received from the Board of Directors either a "leasing permit" or "hardship leasing permit." . . . The Board of Directors shall have the authority to establish conditions as to the duration and use of such permits consistent with this Paragraph. All leasing permits and hardship leasing permits shall be valid only as to a specific Unit Owner and Unit and shall not be transferable between either Units or Unit Owners[.]

of payments is, however, governed by Sec. 10 (c) (ii) the Declaration, which provides that "[i]f part payment of assessments and related charges is made, the amount received may be applied first to costs and attorney's fees, then to late charges, then to interest, then to delinquent assessments, and then to current assessments." Ace has not alleged that the Association failed to follow this provision of the Declaration, and it has not raised a claim of breach of contract. Instead, Ace raised claims for conversion and fraud, neither of which are actionable under the facts of this case.

Ace does not have a cognizable claim for conversion because there is no evidence the Association wrongfully took funds from Ace's HOA account. "In order to establish a claim for conversion, the complaining party must show (1) title to the property or the right of possession, (2) actual possession in the other party, (3) demand for return of the property, and (4) refusal by the other party to return the property." (Citation omitted). *Trey Inman & Assocs., P.C. v. Bank of America, N.A.*, 306 Ga. App. 451, 457 (4) (702 SE2d 711) (2010). Although money is not typically the type of tangible personal property that is subject to a conversion claim, conversion is available if a specific amount of money was placed in an account for a specific purpose and the defendant converted it to another use. See *Decatur Auto Center, Inc. v. Wachovia Bank, N.A.*, 276 Ga. 817, 820-821 (583 SE2d 6) (2003). Here, Ace has

9

not established that the Association possesses any money that Ace has a right to have returned. Further, although Ace contends that the Association failed to properly record payments, thereby causing unwarranted late fees and other penalties, Ace has presented no specific evidence of delayed recording of payments.

Ace also does not have a cognizable claim for fraud. The tort of fraud has five elements: "(1) false representation by defendant; (2) scienter; (3) intent to induce the plaintiff to act or refrain from acting; (4) justifiable reliance by the plaintiff; and (5) damage to the plaintiff." (Citation omitted.) *Ades v. Werther*, 256 Ga. App. 8, 11 (2) (567 SE2d 340) (2002). "The absence of a single element warrants summary judgment." Id. Ace contends that the Association used deception and subterfuge to create fictitious delinquencies and coerce Ace into paying amounts that were not due. Again, however, Ace has not identified any specific evidence of delayed recording of payments, nor has it identified any specific fee that was erroneously charged.

Overall, while it is clear Ace complains about how the Association applied its payments, Ace has not established – or even alleged – that the Association's application of its payments was in derogation of the Declaration. Because Ace has not stated a cognizable claim for conversion or fraud, the trial court correctly granted summary judgment on these counterclaims.

*(c) Punitive Damages & Attorney Fees*

Finally, there is no merit to Ace's assertion that the trial court erred by granting summary judgment on its requests for punitive damages and attorney fees and expenses of litigation under OCGA § 13-6-11. Because Ace's main claims fail, these derivative claims also fail. See *ULQ, LLC v. Meder*, 293 Ga. App. 176, 182 (4) (666 SE2d 713) (2008) (claims for punitive damages and attorney fees are derivative of a plaintiff's substantive claims); *Cabrel v. Lum*, 289 Ga. 233, 240 (6) (710 SE2d 810) (2011) ("The expenses of litigation recoverable pursuant to OCGA § 13-6-11 are ancillary and may only be recovered where other elements of damage are also recoverable.") (citation and punctuation omitted).

For the foregoing reasons, we discern no error in the trial court's grant of summary judgment to the Association.

*Judgment affirmed. Rickman, C. J., and Pipkin, J., concur in the judgment only.*