**FIFTH DIVISION**
**BROWN, C. J.,**
**RICKMAN, P. J., and MERCIER, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.gov/rules

June 24, 2026

# In the Court of Appeals of Georgia

A26A0201. T&B, LLC et al v. SAMBI et al.

BROWN, Chief Judge.

In 2020, Gaganjot Sambi and Rising Star 14, LLC ("Purchasers") entered into a sales contract to purchase three parcels of real estate from Ty Robinson and T&B, LLC ("Sellers"). Sellers refused to return the earnest money that had been held in an escrow account after Purchasers elected to terminate the contract during the inspection period. As a result, Purchasers filed the instant action against Sellers for breach of contract, breach of implied contract, breach of contractual duty of good faith and fair dealing, unjust enrichment, conversion, punitive damages and attorney fees. Purchasers filed a partial motion for summary judgment and Sellers filed a motion for judgment on the pleadings, or in the alternative, motion for summary judgment. The

trial court denied Sellers' motion and granted Purchasers' motion for partial summary judgment on their claims for breach of contract, breach of contractual duty of good faith and fair dealing and attorney fees. Sellers appeal. For the following reasons, we affirm in part and reverse in part.

*The Contract.* The record shows that in June 2020, Sellers and Purchasers entered negotiations for Purchasers to buy three commercial properties located in Lawrenceville: 1855 Duluth Highway, 1861 Duluth Highway, and 5150 Sugarloaf Parkway (collectively, the "Property"). On June 30, 2020, Andy Morgan—an independent escrow attorney—presented the parties with a land sales contract (the "Contract"). The Contract agreed that the purchase price would be $2.2 million and that Purchasers would deposit $50,000 earnest money in an escrow fund prior to inspection. A document titled "Special Stipulations" was attached as "Exhibit A" to the Contract. The first Special Stipulation grants a 15-day inspection period ("Inspection Period") under the following terms:

> 1. Seller hereby agrees to give Purchaser until 15 days after acceptance date (such period to be exclusive of the acceptance date) as an "Inspection Period" to determine the suitability of the property for his intended use. If at the end of the Inspection Period Purchaser, at his sole discretion, determines the property is not suitable for Purchaser's

intended use then Purchaser shall notify Seller of such in writing (with a copy to the Escrow Agent) on or before 11:59 PM on the last day of the Inspection Period and Escrow Agent shall pay $100.00 of the Escrow Funds to Seller and promptly refund the remaining $49,900.00 of the Escrow Funds (less any applicable Escrow Agent fee) to the Purchaser as full and liquidated damages, relieving the Seller and Purchaser of any and all obligations contained herein.

The second Special Stipulation sets forth the following steps to be taken at the conclusion of the Inspection Period:

2. If at the end of the Inspection Period[,] Purchaser does not provide Seller with notice that the [Property] is not suitable for his purposes, then the initial $50,000.00 earnest money deposit shall thereafter become non-refundable; provided Seller does not default or is not otherwise unable to deliver title to the Property at closing ... Purchaser will close on or before fifteen (15) days after the last day of the Inspection Period, provided, however that if such date is not a date on which banks are open to conduct business, the closing shall take place on the next available date on which banks are open. If the sale contemplated herein should not close by the prescribed date due to Purchaser's default, then the Escrow Agent shall pay all earnest money to Seller which shall serve as full and liquidated damages, relieving the Seller and Purchaser of any and all responsibilities and obligations contained herein.

*First Revised Contract.* On July 1, 2020, Purchasers signed the Contract and returned it to Sellers. On that same date, Sellers sent an e-mail with revisions to the Contract which deleted two paragraphs from the Contract related to plans to develop the property prior to closing ("First Revised Contract"). Sellers' revisions also added a handwritten third stipulation to the Special Stipulations in "Exhibit A." This third Special Stipulation states that "the Seller will assign to Purchaser any plans or permits for said property in his possession." Sellers' email stated that Purchasers had until 6:00 p.m. that day to accept this revised offer.

On July 1, 2020, at 5:59 p.m., Purchasers accepted the deletions on the first portion of the Contract by e-mail. However, Purchasers' e-mail failed to return the revised "Exhibit A," which included the third Special Stipulation. Purchasers signed and returned the revised "Exhibit A" on July 2. On July 6, Purchasers placed the $50,000 earnest money into an escrow account.

*Second Revised Contract.* On July 16, 2020, the parties again revised the Contract by changing the Inspection Period from 15 to 17 days. In relevant part, the revision states: "Seller hereby agrees to give Purchaser until 17 days after acceptance date (such period to be exclusive of the acceptance date) as an Inspection Period to

determine the suitability of the property for Purchaser's intended use ("Second Revised Contract"). This change was initialed and dated by both parties.

*The Termination.* On July 19, 2020, Purchasers informed Sellers and the escrow agent via an e-mail that they did not want to purchase the Property. On July 21, Sellers, through the escrow agent, rejected the Purchasers' option to terminate the Contract and refused to release their claim on the earnest money deposit on the grounds that the termination notice was submitted a date late.

*The Instant Action.* Purchasers filed a renewal complaint against Sellers alleging breach of contract, breach of implied duty of good faith and fair dealing, unjust enrichment, conversion, and punitive damages. Purchasers also sought attorney fees under OCGA § 13-6-11. Purchasers filed a motion for partial summary judgment on their claims for breach of contract, unjust enrichment, breach of the implied duty of good faith and fair dealing, and attorneys fees. Sellers filed a motion for judgment on the pleadings. After a hearing, the trial court denied Sellers' motion for judgment on the pleadings and granted Purchasers' motion in part. In its order, the trial court concluded that Purchasers "accepted the contract on July 1, 2020."

The trial court granted Purchasers' motion for partial summary judgment on their claim for breach of contract, holding that Purchasers'

> termination of the contract was … timely [because] the period for inspection does not begin to run until the day *after* the Contract is executed. Therefore, it would have begun to run on July 2, 2020, which would have given the [Purchasers] until July 19, 2020, to notify [Sellers of] their intent to not move forward with the purchase.

(Emphasis added). The trial court also granted the Purchasers' motion for partial summary judgment on their claims for implied duty of good faith and fair dealing based upon its finding that "Sellers have failed to show any reasonable basis for their refusal to refund or release their claim to [Purchasers'] earnest money deposit." Finally, the trial court granted Purchasers' motion for partial summary judgment on their claim for attorney fees under OCGA § 13-6-11. The trial court denied the motion for partial summary judgment on Purchasers' claim for unjust enrichment. Sellers appeal.

1. *Summary judgment.* In related enumerations of error, Sellers argue that the trial court erred in granting summary judgement to Purchasers on their claims for breach of contract and breach of implied duty of good faith and fair dealing. They also

claim that the trial court erred by awarding summary judgment in favor of Purchasers on their claim for OCGA § 13-6-11 attorney fees.

Summary judgment is appropriate when the moving party can "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law[.]" OCGA § 9-11-56(c).

> Summary judgments enjoy no presumption of correctness on appeal, and an appellate court must satisfy itself de novo that the requirements of OCGA § 9-11-56(c) have been met. In our de novo review of the grant of a motion for summary judgment, we must view the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmovant.

*Coward v. Widener*, 287 Ga. 622, 624(1)(a) (697 SE2d 779) (2010) (citation and punctuation omitted).

(a) *Breach of Contract.* Sellers argue that the trial court erred in awarding summary judgment to the Purchasers on their claim for breach of contract. The crux of Sellers' argument is that "the parties understood and intended for the due diligence period to run from July 1" and thus, the 17-day "due diligence period expired on July 18," and Purchasers' failure to timely rescind the agreement meant that they were not

7

entitled to a refund of the escrow funds. Accordingly, the dispositive issue is the date that the Inspection Period terminated.

> In Georgia, the construction of contracts involves three steps. At least initially, construction is a matter of law for the court. First, the trial court must decide whether the language is clear and unambiguous. If it is, the court simply enforces the contract according to its clear terms; the contract alone is looked to for its meaning. Next, if the contract is ambiguous in some respect, the court must apply the rules of contract construction to resolve the ambiguity. Finally, if the ambiguity remains after applying the rules of construction, the issue of what the ambiguous language means and what the parties intended must be resolved by a jury. The existence or nonexistence of an ambiguity is a question of law for the court.

*White v. Kaminsky*, 271 Ga. App. 719, 721 (610 SE2d 542) (2004). See also *Equifax, Inc. v. 1600 Peachtree, LLC*, 268 Ga. App. 186, 191 (601 SE2d 519) (2004) ("Where the language of a contract is clear and unambiguous and capable of only one reasonable interpretation, construction of a contract is a matter of law reserved for the trial court.").

In this case, we find that the plain and unambiguous terms of the Contract dictate that the Inspection Period was to begin the day *after* the Contract was executed. Specifically, the first stipulation on "Exhibit A" to the initial Contract

provides that "Seller hereby agrees to give Purchaser until 15 days after acceptance date (*such period to be exclusive of the acceptance date*) as an Inspection Period[,]" and "shall notify Seller of such in writing (with a copy to the Escrow Agent) on or before 11:59 PM on the last day of the Inspection Period[.]" (Emphasis added).

Here, Purchasers signed the Contract on July 1, 2020, and therefore, under the plain terms of the contract, the first day of the Inspection Period was July 2, 2020. The Contract initially afforded Purchasers a 15-day Inspection Period. However, on July 16, 2020, the parties mutually agreed to change the Inspection Period from 15 to 17 days by signing the Second Revised Contract. Specifically, the Second Revised Contract stated that "Seller hereby agrees to give Purchaser until 17 days after acceptance date (*such period to be exclusive of the acceptance date*) as an 'Inspection Period' to determine the suitability of the property for Purchaser's intended use[.]" (Emphasis added). Accordingly, the inspection period ran from July 2, 2020 until July 19, 2020. Purchasers gave Sellers notice of their intent to cancel the contract via an e-mail delivered to Sellers and the escrow agent on July 19, 2020.

Further, we find no merit in Sellers' argument that Purchasers were required to provide an "official termination" through their lawyer on July 19. This was not a

requirement set forth in the Contract. Instead, the terms of the Contract merely required Purchasers to "notify Seller … in writing" that they intended to terminate the contract "on or before 11:59 PM on the last day of the Inspection Period." They did this in an e-mail on July 19.

(b) *Breach of implied faith and fair dealing.* Because we affirm the trial court's grant of summary judgment in favor of Purchasers on their breach of contract claim, we find no merit in Sellers' argument on appeal that the trial court erred by granting summary judgment in favor of Purchasers on their claim for breach of implied good faith and fair dealing. Such a claim cannot survive independent of a valid breach of contract claim. See *Ceaser v. Wells Fargo Bank, N. A.*, 322 Ga. App. 529, 533(2)(c) (744 SE2d 369) (2013) (a party may not maintain a claim for the breach of the implied covenant of good faith and fair dealing absent a valid breach of contract claim). As a result of our conclusion in Division (1)(a), we conclude that the trial court did not err in granting summary judgment to Purchasers on this claim.

(c) *Attorney Fees.* Sellers argue that the trial court erred in granting summary judgment to Purchasers on their claim for attorney fees under OCGA § 13-6-11. We

agree. An award of attorney fees under OCGA § 13-6-11 is a matter for a jury or a court sitting as a trier of fact.

OCGA § 13-6-11 provides:

> The expenses of litigation generally shall not be allowed as a part of the damages; but where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the *jury* may allow them.

(Emphasis added). "As indicated by the plain language of the statute, the determination of whether there has been bad faith in support of an award pursuant to OCGA § 13-6-11 is normally an issue for a jury." *Metro Atlanta Task Force for the Homeless v. Ichthus Cmty. Trust*, 298 Ga. 221, 238(5) (780 SE2d 311) (2015). Accord *Rossee Oil Co. v. BellSouth Telecommunications*, 212 Ga. App. 235, 236 (441 SE2d 464) (1994) ("Questions of bad faith, stubborn litigiousness, and unnecessary expense, under OCGA § 13-6-11, are generally questions for the factfinder.") (punctuation omitted). Consequently, "because both the liability for and amount of attorney fees pursuant to OCGA § 13-6-11 are solely for the jury's determination, a trial court is not authorized to grant summary judgment in favor of a claimant therefor." *Covington*

*Square Assoc. v. Ingles Markets*, 287 Ga. 445, 446 (696 SE2d 649) (2010). "Although the trial court may grant attorney fees or litigation expenses under OCGA § 13-6-11 where it sits as the trier of fact, it is not a trier of fact on a motion for summary judgment." Id. at 448. Accordingly, in this case, the trial court erred by granting summary judgment on Purchasers' claim for attorney fees pursuant to OCGA § 13-6-11. The trial court's order on this issue is reversed.

2. *Judgment on the pleadings.* Sellers contend that the trial court erred in denying their motion for judgment on the pleadings on Purchasers' claims for implied contract, unjust enrichment, conversion, and punitive damages.

When reviewing a motion on the pleadings, "the issue is whether the undisputed facts appearing from the pleadings entitle the movant to judgment as a matter of law. All well-pleaded material allegations by the nonmovant are taken as true, and all denials by the movant are taken as false[.]" *Hewell v. Walton County*, 292 Ga. App. 510, 511(1) (664 SE2d 875) (2008). "On appeal, we review de novo the trial court's decision on a motion for judgment on the pleadings, and we construe the complaint in a light most favorable to the appellant drawing all reasonable inferences in his favor." Id. at 510 (punctuation omitted).

(a) *Unjust enrichment.* Sellers argue that the trial court erred in denying their motion for judgment on the pleadings on Purchasers' claim for unjust enrichment. We agree.

In their complaint, Purchasers alleged that Sellers were unjustly enriched because they failed to return the escrow funds. The trial court's order denied Purchasers' motion for partial summary judgment on their claim for unjust enrichment, but summarily denied Sellers' motion for judgment on the pleadings on the same claim. "The theory of unjust enrichment applies when there is no legal contract and when there has been a benefit conferred which would result in an unjust enrichment unless compensated." *Tidikis v. Network for Medical Communications & Research, LLC*, 274 Ga. App. 807, 811(2) (619 SE2d 481) (2005) (punctuation omitted). Here, the unjust enrichment claim fails as a matter of law because Purchasers are able to recover under their breach of contract claim. See *Bonem v. Golf Club of Ga.*, 264 Ga. App. 573, 578–79(3) (591 SE2d 462) (2003) (plaintiff entitled to summary judgment on defendant's counterclaim for unjust enrichment where dispute governed by legal contract). Accordingly, we reverse the trial court's denial of Sellers' motion for judgment on the pleadings as to this cause of action.

(b) *Conversion.* Purchasers' complaint alleges a cause of action for conversion because Sellers "are in unlawful possession of [$49,900] of [Purchasers'] earnest money and have refused to return it" after Purchasers terminated the Contract. Sellers contend that the trial court erred in denying their motion for judgment on the pleadings as to Purchasers' claim for conversion because Purchasers failed to show that Sellers were in possession of the allegedly converted funds and failed to show that the converted funds were the proper subject of a conversion claim. We disagree.

Conversion "consists of an unauthorized assumption and exercise of the right of ownership over personal property belonging to another, in hostility to his rights; an act of dominion over the personal property of another inconsistent with his rights; or an unauthorized appropriation." *Trey Inman & Assoc., P.C. v. Bank of America, N.A.*, 306 Ga. App. 451, 457(4) (702 SE2d 711) (2010). In order to establish a claim for conversion, Purchasers must show: "(1) title to the property or the right of possession, (2) actual possession in the other party, (3) demand for return of the property, and (4) refusal by the other party to return the property." *Internal Medicine Alliance v. Budell*, 290 Ga. App. 231, 239(5) (659 SE2d 668) (2008).

Sellers argue that because the earnest money funds have remained in an escrow account, Purchasers have failed to demonstrate that Sellers have "actual possession" of the earnest money funds. However, the evidence shows that Sellers were in charge of ordering the release of these escrow funds. "Because the evidence showed that [Purchasers] had an immediate right to possess" the earnest money as reflected in the Contract, Sellers exercised control over Purchasers' property. *Alexander Law Firm, P.C. v. Richburg*, 361 Ga. App. 376, 383(2) (864 SE2d 479) (2021) (evidence was sufficient to sustain a jury's verdict on conversion claim when law firm exercised control over plaintiff's property located in a storage unit and law firm refused to allow plaintiff to retrieve the property).

Sellers are correct that "money, generally, is not subject to a civil action for trover with an election for damages for its conversion." *Trey Inman & Assoc., P.C.*, 306 Ga. App. at 458(4) (punctuation omitted). However, an exception to this common law rule exists when "specific amounts of money [have been] placed on deposit with a bank[.]" Id. (punctuation omitted) ($76,122 in funds that law firm wrongfully disbursed to a vendor via wire transfer was specific and identifiable and was, therefore, a proper subject for the bank's conversion claim). Accord *Rubenstein v. Palatchi*, 359

Ga. App. 139, 142(1) (857 SE2d 81) (2021) ("A money-based conversion claim may proceed only if the money comprises a specific, separate, identifiable fund set aside from other money.") (punctuation omitted). Here, because the earnest money was a specific amount that was placed into an escrow account, it is such a specific and identifiable fund that is the proper subject of a conversion claim.

(c) *Implied contract and punitive damages.* We decline to address Sellers' argument that the lower court erred in denying their motion for judgment as a matter of law on Purchasers' claims for implied contract and punitive damages. Seller failed to support these enumerations with citations to the record, relevant law, or argument and they are thus deemed to be abandoned. See *Caring Hands, Inc. v. Ga. Dept. of Human Resources*, 222 Ga. App. 608, 609(2) (475 SE2d 660) (1996) ("[F]ailure to support the enumerated errors by citation of authority or argument constitutes abandonment of such enumerated errors.") (punctuation omitted).

3. Sellers argue that the trial court erred by refusing to dismiss Seller Ty Robinson in his individual capacity as a party to this action. Sellers have failed to provide any citations to the record showing that they raised this issue below or that the trial court ruled upon it. Because Sellers have not provided a sufficient citation to the

record to evaluate this enumeration, it is abandoned. *Tolbert v. State*, 378 Ga. App. 478, 483(5) (925 SE2d 736) (2026). See also *Arnold v. State*, 262 Ga. App. 61, 61(1) (584 SE2d 662) (2003) ("As we have reiterated time and time again, this Court will not cull the record in search of error on behalf of a party.") (punctuation omitted).

*Judgment affirmed in part and reversed in part. Rickman, P. J., and Mercier, J., concur.*